Antonio Fernández Morales, demandante y apelado, *v.* Lydia E. García Santiago, Erasto García y Araminta Santiago, demandados y apelante la primera.

Número 11049.

*Sometido:* 1 de octubre de 1953. *Resuelto:* 20 de noviembre de 1953.

---

(5) El tribunal a quo llegó a la conclusión de que la apelada no había actuado con temeridad al defenderse.

*Sigfredo Vélez González* y *J. Córdova Rivera,* abogados de la apelante; *Antonio Reyes Delgado,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del tribunal.

Antonio Fernández Morales radicó en la anterior sección de Arecibo de la Corte de Distrito de Puerto Rico una demanda de nulidad de matrimonio contra su esposa Lydia E. García Santiago y los padres de ella. La demanda se basa en dos extremos, a saber: (*a*) alegada coacción o intimidación del Juez de Paz de Barceloneta al decirle al demandante en el Cuartel de la Policía que si él no se casaba él sería procesado por seducción, y que si se casaba, el Juez de Paz le ayudaría en obtener luego el divorcio o la nulidad del matrimonio; (*b*) que al casarse, la esposa tenía menos de 16 años de edad.

Se celebró la vista del caso en sus méritos en el tribunal de Arecibo, el cual finalmente dictó sentencia declarando con lugar la demanda. Resolvió el tribunal a quo en cuanto al primer extremo arriba señalado, que aún impartiéndole toda credibilidad a la prueba presentada por el demandante, no

se había establecido un caso de intimidación que convirtiese en ineficaz el consentimiento del demandante para contraer matrimonio, bajo las disposiciones del artículo 73 de nuestro Código Civil. En cuanto al segundo extremo, resolvió el tribunal sentenciador, después de considerar la prueba practicada, que efectivamente la esposa tenía menos de 16 años al casarse, y que no habiéndose revalidado el matrimonio, éste era nulo, bajo las disposiciones del inciso 3 del artículo 70 del Código Civil. Es un hecho incontrovertido que la esposa, Lydia E. García, concibió un hijo un mes antes de casarse y que ese hijo nació después de haber transcurrido 180 días con posterioridad a la celebración del matrimonio

Los demandados han apelado para ante este Tribunal y han señalado varios errores. Es innecesario el discutir esos errores ya que de los autos surge que la demanda no aduce hechos suficientes para constituir una reclamación válida, no habiendo la prueba suplido o subsanado esa insuficiencia.

■ En cuanto a la primera cuestión planteada relativa a la intimidación de que se alega fué objeto el demandante, en la demanda se alega lo siguiente:

"Alega el demandante que el día 21 de los corrientes fué arrestado y traído ante la presencia del Juez de Paz de Barceloneta, y éste le informó que Lydia E. García Santiago alegaba que el demandante le había seducido y/o violado y que le había conducido a una casa de prostitución, por lo que él se encontraba acusado de dos o tres delitos, en relación con dicha menor, y que la única oportunidad que tenía de evitar los procesos indicados era casándose con ella; que ante esa situación y bajo tal coacción moral, no teniendo a la mano un abogado que le aconsejase, siendo el demandante hombre sin experiencia en asuntos de esta índole, y para evitar un escándalo, ante la indicación de que dicha Lydia E. García Santiago en seguida solicitaría su divorcio, el demandante accedió a la indicación del Juez de Paz de Barceloneta, y sin haber nunca tenido contacto carnal con dicha Lydia E. García Santiago, ni haberle producido daño alguno, ni haberla llevado a ninguna casa de prostitución, y sin haberle prometido en ocasión alguna casarse con

ella, y sin que dicha menor tuviera la edad legal para contraer tal matrimonio, siguiendo exclusivamente el consejo dádole por el referido Juez de Paz de Barceloneta, el demandante accedió a casarse con la demandada Lydia E. García Santiago, quien no tiene ahora ni tenía cuando se casó con el demandante la edad de 16 años.

"Que el demandante al contraer dicho matrimonio lo hizo por la intimidación de que fué objeto, y en evitación de ser llevado a la cárcel y escandalizado en su vecindad."

Al resolver el caso, el tribunal de Arecibo resolvió que aun cuando la prueba había sostenido esa alegación, la misma no era suficiente en derecho para anular el matrimonio. El artículo 73 de nuestro Código Civil dispone lo siguiente:

"Artículo 73.  No es eficaz el consentimiento:

"1. Cuando sea dado al raptor por la raptada, mientras ésta no haya recobrado por completo su libertad.

"2. Cuando sea obtenido por violencia o intimidación."

En el caso de *López* v. *Valdespino*, 6 D.P.R. 172, segunda edición, se resuelve que el hecho de que una parte se vea obligada a contraer matrimonio para evadir determinadas responsabilidades criminales que pudieran exigírsele si no lo hiciere, no constituye la coacción que como causa de nulidad del matrimonio establece el Código Civil de 1889.  Estamos de acuerdo, y ratificamos ese criterio.  Las amenazas alegadas en este caso no son suficientes para constituir la "intimidación" a que se refiere el artículo 73.

En cuanto a la segunda modalidad expuesta en la demanda, o sea, el hecho de que, al casarse, la esposa tenía menos de 16 años de edad, el esposo no está facultado para interponer una reclamación de nulidad de matrimonio por tal fundamento.  Es a los representantes legales de la esposa en este caso a quienes les corresponde, en nombre de los menores, el presentar una demanda de nulidad basada en tal extremo.  El inciso 3 del artículo 70 del Código Civil dispone lo siguiente:

"Son incapaces para contraer matrimonio: . . . .

"3. Los varones menores de diez y ocho años y las mujeres menores de diez y seis años. Se tendrá, no obstante, por revalidado *ipso facto* y sin necesidad de declaración expresa, el matrimonio contraído por menores de dicha edad, si un día después de haber llegado a la pubertad legal, hubiesen vivido juntos *sin haber reclamado en juicio contra su validez las personas que legalmente les representen,* o si la mujer hubiese concebido antes de la pubertad legal o de haberse entablado la reclamación." (Bastardillas nuestras.)

Del anterior articulado surge que la reclamación corresponde a las personas que legalmente representen a la menor. En primer término, debemos señalar que el inciso primero del artículo 83 del Código Civil de España, base directriz del inciso 3 del 70 nuestro, dispone lo siguiente:

"No pueden contraer matrimonio:

"1º Los varones menores de catorce años cumplidos y las hembras menores de doce, también cumplidos.

"Se tendrá, no obstante, por revalidado *ipso facto* y sin necesidad de declaración expresa el matrimonio contraído por impúberes, si un día después de haber llegado a la pubertad legal hubiesen vivido juntos sin haber reclamado en juicio contra su validez, o si la mujer hubiera concebido antes de la pubertad legal o de haberse entablado la reclamación."

Como se ve, el inciso 3 del artículo 70 nuestro es más específico que el 83 de España en cuanto a la identidad de las personas que pueden entablar la reclamación, ya que a la frase contenida en el 83 de España "sin haber reclamado en juicio contra su validez", el nuestro añade taxativamente "las personas que legalmente les representen". La indefinición del estatuto básico español queda aclarada en el nuestro, que limita la facultad de entablar reclamaciones de nulidad a los representantes legales del cónyuge impúber. La adición limitativa incorporada a nuestro Código es expresión de una clara intención legislativa de excluir al otro cónyuge, de suficiente edad, del ámbito de autorización en cuanto a la iniciativa judicial de lograr la nulidad. El acto de defini-

ción específica conlleva la exclusión de otras personas no incluídas en la descripción precisa.

El artículo 111 de nuestro Código Civil dispone lo siguiente:

"La acción para pedir la nulidad del matrimonio corresponde *a los cónyuges,* al fiscal y a cualesquiera otras personas que tengan interés en dicha nulidad.

"En los casos de violencia o intimidación sólo podrá ejercitar la acción de nulidad el cónyuge inocente." (Bastardillas nuestras.)

La generalidad del artículo 111 debe quedar condicionada por, y debe ser inaplicable a, la disposición especial del inciso 3 del artículo 70, el cual debe ser considerado como excepción al artículo 111.

Como cuestión relevante y significativa de historia legislativa, el artículo 102 del Código Civil de España, precursor del 111 nuestro, dispone en parte lo siguiente:

"La acción para pedir la nulidad del matrimonio corresponde a los cónyuges, al Ministerio fiscal y a cualesquiera personas que tengan interés en ella.

"Se exceptúan los casos de rapto, error, fuerza o miedo, en que solamente podrá ejercitarla el cónyuge que los hubiese sufrido; y el de impotencia, en que la acción corresponderá a uno y otro cónyuge y a las personas que tengan interés en la nulidad."

Es distinta la situación en España a la que prevalece en nuestra jurisdicción. En primer lugar, el artículo 102 español habla en términos expresos de "excepción". No así el nuestro. En segundo término, como hemos visto, el artículo 70 de Puerto Rico establece una limitación que no aparece en el 83 de España, esto es, se refiere a la reclamación a ser entablada por las personas que representen legalmente al impúber, lo que implica el asentamiento de una excepción adicional.

El matrimonio celebrado en el caso de autos es meramente anulable y no nulo "ab-initio". El defecto en cuanto a edad

insuficiente es uno que se adhiere a la persona del impúber. Es un defecto que se desvanece al llegarse a la edad autorizada, mediante el concurso de las circunstancias enumeradas en el artículo 70. El propio artículo dispone que tal matrimonio puede quedar revalidado, *"ipso facto* y sin necesidad de declaración expresa", mediante la cohabitación posterior después de la pubertad legal, sin haberse antes entablado reclamación, o mediante la concepción por la mujer antes de la pubertad legal o de la reclamación. Esto es, está sujeto a ratificación posterior, por los actos de las partes, o por la ausencia de reclamación. Un matrimonio así ratificable no puede ser absolutamente nulo o "nulo ab-initio". Su aptitud para adquirir validez posterior, por la voluntad de las partes, mediante acción u omisión, o mediante el transcurso del tiempo, lo coloca fuera de la categoría de aquellos actos jurídicos inescapablemente nulos, que nunca podrían producir efectos legales. *Campbell* v. *Campbell*, 78 Cal. App. 745, 248 Pac. 762; *Peefer* v. *State*, 182 N. E. 117; *Kirby* v. *Gilliam*, 28 S.E.2d 40; Nelson, *Divorce and Annulment*, vol. 3, pág. 286. Siendo meramente anulable, puede ser impugnado solamente por la persona incapacitada, que tiene la facultad, a través de sus representantes legales, de convalidarlo mediante su inacción al no entablar reclamación alguna. La regla aplicable es al efecto de que un matrimonio anulable por falta de edad legal puede ser anulado solamente a petición de la parte que carezca de la edad legal. En *Rodríguez* v. *Díaz*, 65 D.P.R. 285, se resuelve que un matrimonio de un menor de edad que puede ser válido con el consentimiento de los padres, y un matrimonio entre primos que puede ser válido con la dispensa judicial, es meramente anulable y no nulo "ab-initio." Es cierto que este Tribunal también ha resuelto que el matrimonio de una persona ya casada es absolutamente nulo (*Cruz* v. *Ramos*, 70 D.P.R. 715). Pero tal matrimonio no está sujeto a la convalidación que es relevante en el caso de autos.

*Siendo insuficiente la demanda, y la prueba presentada, para constituir o justificar una reclamación válida a favor del demandante, debe revocarse la sentencia apelada, y en su lugar, debe dictarse sentencia desestimando la demanda.*