ENRIQUE CALDERÓN, demandante y apelante, *v.* SOFÍA VALLECILLO VDA. DE CALDERÓN, ET. AL., demandados y apelados.

Número 11038.

*Sometido:* 4 de diciembre de 1953. *Resuelto:* 25 de enero de 1955.

*Bolívar Pagán,* abogado del apelante; *R. Rivera Zayas, G. Rivera Cestero* y *Milton F. Rúa,* abogados de los apelados.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

Para probar su condición de hijo natural, de acuerdo con el art. 125 del Código Civil de Puerto Rico, el demandante y apelante tuvo que alegar en una demanda de filiación y otros extremos, "que al tiempo de la concepción del demandante, Alfonso P. Calderón" (alegado padre natural del demandante y apelante) "aparecía como casado con Jesusa Jiménez Correa, pero el matrimonio de éstos es nulo de pleno derecho y así ineficaz e inexistente, por las siguientes razones: (1) porque al verificarse dicho matrimonio no se cumplieron las solemnidades de ley, por no haber testigos presentes en el acto y (2) porque, al contraer dicho matrimonio, las partes lo hicieron con el concebido y deliberado propósito de no hacer vida conyugal en forma alguna, la cual vida conyugal nunca hicieron." Dándose cuenta de la necesidad de resolver previamente la alegada nulidad del matrimonio celebrado entre don Alfonso P. Calderón y doña Jesusa Jiménez Correa, la ilustrada sala sentenciadora ordenó un juicio por separado de la cuestión litigiosa previa, de acuerdo con la Regla 42(*b*) de las Reglas de Enjuiciamiento Civil de Puerto Rico. Celebrada la correspondiente vista, la ilustrada sala sentenciadora estimó probados, entre otros los siguientes hechos: que el día 14 de mayo de 1912, se celebró ante el señor Juez Municipal de San Juan don Manuel Gaetán Barbosa, el matrimonio civil que contrajeron don Alfonso Calderón Rivera y doña Jesusa Jiménez Correa; que dicho matrimonio se celebró en la casa residencia de la familia Quiñones de Lugo instalada en la Calle San Sebastián núm. 65 de San Juan, Puerto Rico, actuando como testigos el señor Manuel Quiñones de Lugo y la señora María Luisa Quiñones de Lugo, firmando ambos el acta de matrimonio como tales testigos; que el día 15 de mayo de 1912, al folio 325 del Libro núm. 7 del Registro Civil,

partida núm. 152 de dicho libro, se inscribió por el señor Encargado del Registro Civil, el matrimonio de don Alfonso Calderón Rivera y doña Jesusa Jiménez Correa, mediante la siguiente acta de matrimonio:

ACTA DE MATRIMONIO.

En San Juan, P. R. á las diez de la mañana del día quince de mayo de mil novecientos doce, yo Manuel Moraza Díaz, Encargado del Registro Civil, certifico que no consta en éste antecedente alguno que impida verificar la transcripción que voy en este acto á efectuar de los particulares pertinentes de una declaración jurada y certificación de haberse celebrado un matrimonio, archivadas en esta oficina y que tengo ante mí, siendo dichos particulares los siguientes:

1.—Que en San Juan, P. R., el día catorce de mayo del año mil novecientos doce, ante Manuel Gaetán Barbosa, Juez Municipal de San Juan, P. R., se celebró el matrimonio Civil que contrajeron Alfonso Calderón Rivera de veinte y ocho años de edad, de estado soltero, de profesión industrial, natural de Carolina, P. R., y avecindado en la casa número... de la calle "General" de Carolina, P. R., y Jesusa Giménez, de veinte y cuatro años de edad, de estado soltera, de profesión labores de su sexo, natural de Carolina, P. R., y avecindada en la casa número ... de la calle "General" de Carolina, P. R.

2.—Que el contrayente Alfonso Calderón Rivera es hijo legítimo de Pedro Calderón, natural de Carolina (difunto) y Dolores Rivera natural de Carolina (viva) y la contrayente Jesusa Giménez es hija legítima de José Monserrate Giménez y de Francisca Rita Correa, natural de Carolina el primero y de Loíza P. R., la segunda: Ambos viven.

3.—Que.................................

Esta transcripción la verifico ante los testigos presenciales, avecindado en la casa número... de la calle......de......, y avecindado en la casa número... de la calle......de......, y leída y aprobada por los que en ella intervienen, la sello con el sello oficial de esta oficina y después de hacerlo el que supo de los mencionados testigos y por el que no supo el rogado por él, la firmo.

........................    ........................
    *Testigo*                *Testigo*

            (Fdo.) Manuel Moraza
              Encargado del Registro Civil.

que los libros del Registro Civil de San Juan correspondientes a los años 1912 y 1913, en los cuales se transcribían las actas de los matrimonios que se celebraban en aquella época en esta capital, no contenían espacio alguno donde hacer constar en dichas actas los nombres de los testigos que habían actuado como tales en la celebración del matrimonio, aunque tenían un espacio para hacer constar los testigos que presenciaban la transcripción del acta; que las actas originales de los matrimonios que se transcribían en el Libro de Matrimonios del Registro Civil no habían sido conservadas por el Encargado del Registro Civil, no existían al momento de celebrarse la vista y no se tenía conocimiento alguno de ellas que no fuera las transcripciones que de las mismas se habían hecho en los libros del Registro Civil a cargo del Negociado del Registro Demográfico y Estadísticas del Departamento de Salud de Puerto Rico; que el día 5 de diciembre de 1913 doña Jesusa Jiménez Correa radicó demanda de divorcio en la anterior Corte de Distrito de San Juan, contra don Alfonso Calderón Rivera, alegando que desde el mismo día de la celebración de sus nupcias el demandado la había abandonado, y el día 29 de diciembre de 1913 la Corte de Distrito de San Juan dictó sentencia a favor de doña Jesusa Jiménez Correa por la causal de abandono de la mujer por parte del marido; que habiendo nacido el demandante en este caso don Enrique Calderón, el 9 de febrero de 1914, era evidente que si el demandante había tenido un período normal de gestación, había sido concebido nueve meses antes, o sea, el 9 de junio de 1913, o si el aquí demandante había tenido un período de gestación de siete meses, había sido concebido el 9 de agosto de 1913, o si el aquí demandante había tenido un período de seis meses, había sido concebido el 9 de septiembre de 1913, y por lo tanto, como don Alfonso P. Calderón estuvo casado con doña Jesusa Jiménez Correa desde el 14 de mayo de 1912 hasta el 29 de diciembre de 1913 era evidente que el aquí demandante y apelante no había sido concebido mientras sus pa-

dres podían casarse con dispensa o sin ella; que el aquí demandante y apelante no probó, que al celebrarse el matrimonio de don Alfonso P. Calderón con doña Jesusa Jiménez Correa, los contrayentes lo hicieran con el concebido y deliberado propósito de no hacer vida conyugal en forma alguna, y por el contrario, el Tribunal estima probado que el referido matrimonio ha sido siempre considerado como válido y legal tanto por doña Jesusa Jiménez Correa como por don Alfonso P. Calderón.

En virtud de dichas conclusiones la ilustrada sala sentenciadora declaró sin lugar la demanda, en todo lo referente a los posibles derechos del aquí demandante y apelante sobre la herencia de su alegado padre natural don Alfonso P. Calderón, pero permitió que la acción continuara al solo efecto de determinar, si el aquí demandante y apelante, tiene derecho a llevar el apellido de su alegado padre natural de acuerdo con las disposiciones de la Ley núm. 243 de 12 de mayo de 1945 (pág. 815). No conforme con dicha sentencia, el demandante y apelante ha apelado ante nos, señalando los siguientes errores: (1)—"el tribunal inferior erró al no declarar que el matrimonio de Alfonso P. Calderón con Jesusa Jiménez Correa es nulo por falta de consentimiento eficaz y porque el mismo fué contraído con propósitos ajenos al mismo; (2) el tribunal inferior cometió error al admitir prueba impertinente sobre asuntos ajenos al matrimonio impugnado y prueba oral sobre la presencia de testigos en el matrimonio de Alfonso P. Calderón con Jesusa Jiménez, sin haberse previamente alegado ni probado que el libro de matrimonios del Registro Demográfico había desaparecido y al no declarar nulo dicho matrimonio por falta de los testigos y sus firmas; (3) el tribunal inferior cometió error al declarar válido el supuesto matrimonio de Alfonso P. Calderón y Jesusa Jiménez Correa, cuando de la prueba ofrecida aparece que ninguno de los supuestos contrayentes firmaron el acta de matrimonio."

En cuanto al primer error, relacionado con la nulidad del matrimonio por falta de consentimiento eficaz y

porque el mismo fué contraído con propósitos ajenos al mismo, el demandante y apelante descansa en la afirmación de doña Jesusa Jiménez Correa, hecha por voz de su abogado don Eugenio Benítez Castaño, en la demanda de divorcio radicada en la anterior Corte de Distrito de San Juan, donde se alega: "desde el día de la celebración de sus nupcias, el demandado abandonó a la demandante, yéndose a vivir separado de ella, contra su voluntad y sin su consentimiento, y sin causa legal de ninguna especie; es de advertir que el demandado contrajo su matrimonio a virtud de cierto proceso criminal que contra él se instruyó por el delito de seducción de la demandante y en la cual fué condenado a tres mil dólares de multa o un día de cárcel por cada cinco dólares, nupcias (que tuvieron) lugar antes de dictarse la sentencia en la indicada causa criminal; después de contraído el matrimonio el demandado apeló de la sentencia contra él dictada en la causa por seducción, para ante la Corte Suprema de Puerto Rico, y no obstante el hecho de haberse unido legalmente a la demandante, nunca quiso vivir con ella, ni la auxilió en forma alguna, ni la solicitó de ninguna manera; y confirmada por la Corte Suprema la sentencia condenatoria contra el demandado, éste ingresó en la penitenciaría de San Juan a cumplir su condena, habiendo transcurrido más de un año desde que el matrimonio se verificó hasta que el demandado ingresó en el presidio, de cuyo penal ha salido hace poco tiempo por indulto sin que una vez en libertad, se haya ocupado para nada de la demandante; la demandante alega que el demandado contrajo su matrimonio con ella con el único propósito de atenuar o disminuir su responsabilidad criminal por el delito de seducción de que fué convicto, y que, ya por los actos realizados por dicho demandado, ya por manifestaciones de él, *nunca existió de parte de dicho demandado el propósito de vivir maritalmente con la demandante*", (t. 93 y 94).

La Ley envuelta en este caso son los siguientes artículos del Código Civil de Puerto Rico: el art. 69 que dispone: "los

requisitos necesarios para contraer matrimonio son: 1—capacidad legal de los contratantes, 2—*consentimiento de las partes contratantes*, 3—autorización y celebración de un contrato matrimonial mediante las formas y solemnidades prescritas por ley"; el art. 70, según quedó enmendado por la Ley núm. 12 del 29 de marzo de 1937 (Leyes de 1936–37, pág. 140), que dispone: son incapaces para contraer matrimonio: 1—los casados legalmente, 2—los que no tuvieren el pleno ejercicio de su razón, 3—los varones menores de diez y ocho años y las mujeres menores de diez y seis años; se tendrá, no obstante por revalidado ipso facto y sin necesidad de declaración expresa, el matrimonio contraído por menores de dicha edad, si un día después de haber llegado a la pubertad legal, hubiesen vivido juntos sin haber reclamado en juicio contra su validez las personas que legalmente les representen, o si la mujer hubiese concebido antes de la pubertad legal o de haberse entablado la reclamación; y disponiéndose, que toda mujer menor de diez y seis años y mayor de catorce años que haya sido seducida, podrá contraer matrimonio previo el consentimiento de sus padres o tutor, y si éstos lo negaren, con el consentimiento de la Corte de Distrito del lugar de la residencia de la seducida, y todo varón menor de diez y ocho años y mayor de diez y seis que *se encontrare acusado de haber seducido a una mujer* mayor de catorce y menor de diez y seis años de edad, podrá también contraer matrimonio previo el consentimiento de sus padres o tutor, y si estos lo negaren con el consentimiento de la Corte de Distrito del lugar de la residencia de la seducida, y se consideraría suficiente para impedir todo proceso tal matrimonio, al igual que en los demás casos a que se refiere el artículo 262 del Código Penal"; el art. 73 que dispone: "no *es eficaz el consentimiento:* 1—cuando sea dado al raptor por la raptada, mientras ésta no haya recobrado por completo su libertad; *cuando sea obtenido por violencia o intimidación*"; el art. 110 que dispone: "es nulo el matrimonio en que no se hayan observado todos los requisitos exigidos por este Có-

digo"; el art. 111 que dispone: "la acción para pedir la nulidad del matrimonio corresponde a los cónyuges, al fiscal y a cualesquiera otras personas que tengan interés en dicha nulidad; en los casos de *violencia* o *intimidación solo podrá ejercitar la acción de nulidad el cónyuge inocente*".

Tenemos que dejar debidamente esclarecido el concepto de "intimidación" como algo sustancialmente distinto al concepto de "violencia". Mientras en el primer caso se trata de una coacción moral o miedo, en el segundo caso se trata de una coacción física. La intimidación según la entiende el derecho civil de nuestro tiempo, es aquella "acción encaminada a intimidar, asustar o producir miedo en el ánimo de una persona; la intimidación tiene por objeto privar de la libertad, y en tal sentido *constituye vicio optativo al consentimiento* que anula el negocio jurídico institucional constitutivo del matrimonio, ya que, por derecho natural primario, nadie, sin deliberado y libre consentimiento, puede ser obligado a contraer matrimonio o a contraerlo con determinada persona": 11 Diccionario de Derecho Privado 2389, (ed. de la Editorial Labor S. A.), (1950). La opción para solicitar la nulidad de un matrimonio, donde el consentimiento se ha obtenido por intimidación, se deja a favor del cónyuge inocente. No se trata pues, de una acción pública, sino de una acción privada.

En Puerto Rico se siguió la misma teoría española del matrimonio civil en cuanto al carácter privado de la acción. El interés público del Estado es la conservación de los matrimonios, y en este sentido, aun aquéllos obtenidos por violencia o intimidación quedan revalidados para el interés público, a menos que el propio cónyuge inocente demande su nulidad.

En este caso lo que se alega es vicio en el consentimiento por encontrarse el contrayente don Alfonso P. Calderón bajo la amenaza de un proceso criminal de seducción. Por dos veces nos hemos negado a reconocer como causa de nulidad por intimidación, el hecho de encontrarse un contrayente so-

metido a un proceso criminal de seducción. *López* v. *Valdespino*, 6 D.P.R. 172 (*Sulzbacher*), (1904), cita precisa a la pág. 177; *Fernández* v. *García*, 75 D.P.R. 472, (*Ortiz*), (1953), cita precisa a la pág. 475. Además no tenemos más remedio que admitir que ha sido norma legislativa, que el matrimonio de las partes, celebrado con prioridad al juicio, bastará para impedir todo proceso por seducción, (art. 262 del Código Penal de Puerto Rico, lo cual armoniza con la enmienda que sufre el 70 del Código Civil de Puerto Rico en virtud de la ley núm. 12 del 29 de marzo de 1937), permitiendo el matrimonio entre menores cuando el menor haya sido acusado por un delito de seducción. Pero lo curioso de este caso, es que quien alega originalmente la intimidación no es el cónyuge coaccionado sino el otro cónyuge, y ésta última, no solicita la nulidad, sino la disolución del matrimonio por abandono. Por el contrario, el posible cónyuge coaccionado se defiende de la demanda de divorcio donde se imputa el abandono, aunque pierde la acción y posteriormente en un testamento abierto, otorgado el 26 de julio de 1939 ante el notario don Raúl Benedicto, (*exhibit a* de los demandados) admite, "que casó en primeras nupcias con doña Jesusa Jiménez Correa en cuyo matrimonio tuvo una hija llamada Socorro Calderón Jiménez, habiendo sido dicho matrimonio disuelto por divorcio", e instituye como heredera legítima suya a dicha hija.

Es indudable asimismo, que aunque no fuera nada más que para legitimar a una hija concebida antes del matrimonio, tendríamos que declarar, que el matrimonio celebrado entre don Alfonso P. Calderón y doña Jesusa Jiménez Correa cumplía uno de los fines más morales de su institucionalidad: la procreación de descendencia legítima.

En cuanto al segundo error relacionado con la admisión de prueba sobre la presencia de los testigos en el matrimonio, es bueno dejar claramente consignado el hecho, que la prueba presentada por los demandados y apelados, y no contradicha por el demandante y apelante, fué en el sentido,

que cuando se celebró el matrimonio estuvieron presentes dos testigos, aunque tal hecho no aparece consignado en el acta de matrimonio del Registro Civil. Es casualmente en este último aspecto de la cuestión, o sea, en el hecho de no aparecer consignado en el acta de matrimonio del Registro Civil, los nombres y direcciones de los testigos del acto matrimonial, en que se fundamenta la posible nulidad del matrimonio celebrado.

Habiéndose celebrado el matrimonio que se impugna el 14 de mayo de 1912 debemos examinar las disposiciones del Código Civil de Puerto Rico vigente a dicha fecha y las disposiciones relativas a la inscripción de los matrimonios celebrados en Puerto Rico contenidas en la "Ley para Establecer una Ley de Registro Civil" de 9 de marzo de 1911 (pág. 197). El art. 2 de la Ley de 10 de marzo de 1904 (pág. 136), vigente en el 1912, que es hoy el art. 76 de la ed. del 1930 del Código Civil de Puerto Rico, dispone que "toda persona, deseosa de contraer matrimonio, acudirá a cualquiera de las personas autorizadas para celebrarlo en el artículo anterior; la persona a quien se acuda examinará al solicitante, bajo juramento, respecto a la capacidad legal de los contrayentes; esta declaración se pondrá por escrito, y deberá consignarse en ella el nombre y apellidos, edad, estado, profesión u oficio, naturaleza y domicilio, de cada una de las partes contrayentes, y de sus respectivos padres, el grado de consanguinidad o afinidad, si lo hubiere, existente entre los contrayentes; y si cualquiera de las personas hubiere contraído antes matrimonio deberá hacerse constar, como también la forma en que fué disuelto, si por muerte, nulidad o divorcio, con el nombre y apellidos del anterior cónyuge y la fecha y lugar del fallecimiento de éste, o el Tribunal que decretó la nulidad o el divorcio, y la fecha del decreto; los nombres, edad y dirección de cada uno de los hijos del anterior matrimonio, si los hubiere. *La declaración deberá ser jurada y firmada por el solicitante* ante la persona a quien hiciere la solicitud, y al efecto las personas autorizadas por este Código para celebrar matrimonios, quedan tam-

bién autorizadas para tomar juramentos a dichos solicitantes; el art. 4 de la Ley de 10 de marzo de 1904, vigente en el 1912, que es hoy el art. 78 de la ed. del 1930 del Código Civil de Puerto Rico, dispone que: "dentro de los diez días de celebrarse un matrimonio, la persona autorizada que lo hubiere celebrado, estará en la obligación de enviar al funcionario encargado del registro civil en el distrito en que tuviere lugar dicha ceremonia, la declaración jurada a que se hace referencia en el artículo (anterior) 76, respaldada con nota de la fecha y lugar en que se celebrare el matrimonio, la cual nota deberá llevar la firma del celebrante, certificada por dos testigos presenciales del acto, cuando menos, cuyo respectivo domicilio también se hará constar en la nota"; el art. 5 de la Ley de 10 de marzo de 1904, vigente en el 1912, que es hoy el art. 79 de la ed. del 1930 del Código Civil de Puerto Rico, dispone que: *"al recibir la declaración y nota al dorso de la misma*, mencionadas en el precedente artículo, el funcionario encargado del registro civil *las asentará inmediatamente en el libro de matrimonios*, archivando los originales en su oficina"; el art. 21 de la Ley para Establecer una Ley de Registro Civil de 9 de marzo de 1911, vigente en el 1912, disponía que "al efecto de extender el asiento de matrimonio, toda persona autorizada por la Ley, ante la que se hubiere celebrado el matrimonio, estará obligada a llevar dentro de los diez días siguientes a la celebración del mismo, al funcionario encargado del Registro Civil en el distrito en que tuvo lugar dicha ceremonia, la declaración jurada que hubieren prestado los contrayentes de acuerdo con las disposiciones de la Ley, respaldada con nota expresiva de la fecha y lugar en que se hubiere celebrado el matrimonio, cuya nota deberá llevar las firmas de los celebrantes y estar certificadas por los testigos presenciales del acto", lo cual no conflige con las disposiciones del art. 4 de la Ley de 10 de marzo de 1904, que es hoy el art. 78 de la ed. del 1930 del Código Civil de Puerto Rico; el art. 22 de la Ley para Establecer una Ley de Registro Civil de 9 de marzo de 1911, vigente en el 1912, disponía que: "la ins-

cripción del matrimonio se verificará *transcribiendo los particulares pertinentes del certificado de su celebración* y haciendo constar además las circunstancias siguientes: 1—el lugar, hora, día, mes y año en que se verificó la inscripción; 2—nombre y apellido del funcionario encargado del registro, y 3—el certificado de no constar en el registro antecedente alguno que impida verificar la transcripción; estos particulares habrán de comprenderse en el acta correspondiente, en párrafo separado y antes de hacerse la transcripción del certificado, que queda indicada", lo cual no conflige con el art. 5 de la Ley de 10 de marzo de 1904, vigente en el 1912, que es hoy el art. 79 de la ed. del 1930 del Código Civil de Puerto Rico; el art. 24 de la Ley para Establecer una Ley de Registro Civil de 9 de marzo de 1911, vigente en el 1912, disponía que: "para el fácil cumplimiento de los artículos anteriores, *se procurará* que las partidas de matrimonio contengan, al menos, las circunstancias siguientes: 1—el lugar, día, mes y año en que se efectúe el matrimonio, 2—el nombre y carácter del funcionario o ministro de la religión que lo hubiese celebrado, 3—los nombres, apellidos, edad, estado, naturaleza, profesión u oficio y domicilio de los contrayentes, 4—los nombres, apellidos y naturaleza de los padres, 5—*los nombres, apellidos y vecindad de los testigos*, etc.", lo cual no conflige tampoco con el art. 5 de la Ley de 10 de marzo de 1904, vigente en 1911, que es hoy el art. 79 de la ed. del 1930 del Código Civil de Puerto Rico; el art. 153 de la ed. del 1911 del Código Civil de Puerto Rico, vigente en el 1912, que es hoy el art. 85 de la ed. de 1930 del Código Civil de Puerto Rico, dispone que: "los matrimonios celebrados antes del primero de enero de 1885 en que empezó a regir en Puerto Rico la ley de Registro Civil se probarán por los medios establecidos en las leyes anteriores; los contraídos después *se probarán sólo por el acta del libro de matrimonios;* si éste hubiere desaparecido, será admisible cualquier prueba adecuada; el art. 319 de la edición del 1911 del Código Civil de Puerto Rico, vigente en el 1912, que es hoy el art. 249 en parte de la ed. del 1930 del Código Civil de

Puerto Rico, dispone: "el registro del estado civil comprenderá las inscripciones o anotaciones de nacimientos, *matrimonios*, emancipaciones, reconocimientos y legitimaciones y defunciones y estará a cargo de los Secretarios de los Municipios"; el art. 320 de la ed. del 1911 del Código Civil de Puerto Rico, vigente en el 1912, que es hoy el art. 250 de la ed. del 1930 del Código Civil de Puerto Rico, dispone que: "las actas del registro serán la prueba del estado civil, la cual sólo podrá ser suplida por otras en el caso de que no hayan existido aquéllas, *o hubiesen desaparecido los libros del registro o cuando ante los tribunales se suscite una contienda;* por último, el art. 76 de la Ley para Establecer una Ley de Registro Civil de 9 de marzo de 1911, vigente en 1912, disponía que: "toda persona particular, funcionario público, ministro del Evangelio, sacerdote, facultativo o comadrona, que infringiere cualquiera de las disposiciones de esta ley, *o dejare incumplida* alguna de las obligaciones que por la misma se le imponen, será culpable de *misdemeanor*, y convicto que fuere, será castigado con multa que no excederá de doscientos dollars."

Asumiendo, aunque sin resolverlo, que las disposiciones aplicables al matrimonio impugnado en este caso, fueran las disposiciones del Código Civil vigentes en el 1912 y las disposiciones de la Ley para Establecer una Ley de Registro Civil de 9 de marzo de 1912, vigente en el 1912, y no las actuales disposiciones de la Ley del Registro Demográfico de Puerto Rico, es indudable que nada hay en el cuadro jurídico que hemos anotado extensamente que nos permita concluir, que es causa de nulidad de un matrimonio que se celebra ante un funcionario autorizado y dos testigos, el hecho de que se dejara de consignar en el acta de matrimonio de nuestros anteriores registros civiles quiénes fueran los testigos del matrimonio.

[5] En primer lugar, la traslación de la declaración jurada y la nota, o sea, el certificado de la celebración del matrimonio, no tenía que ser una traslación literal del contenido de dichos documentos. [6] En segundo lugar, la disposición de ley

que habla sobre lo que debe contener el acta extendida por el encargado del Registro Civil, es directiva más que mandatoria, pues las palabras que se emplean son: "se procurará que las partidas de matrimonio contengan al menos" los nombres, apellidos y vecindad de los testigos. En tercer lugar, cuando se suscitara alguna contienda sobre la validez de un matrimonio, de acuerdo con el anterior art. 320, las actas de matrimonio perdían su carácter de conclusividad lo cual no conflige con el art. 38 de la Ley núm. 24 de 22 de abril de 1931 creando el Registro Demográfico de Puerto Rico, según fuera posteriormente enmendado dicho artículo por la Ley núm. 25 de 17 de abril de 1936 ((1) pág. 213), de la Ley núm. 112 de 6 de mayo de 1941 ((1) pág. 793), de la Ley núm. 99 de 12 de mayo de 1943 (pág. 267) y de la Ley núm. 188 de 2 de mayo de 1951 ((1) pág. 471) que dispone que: "la copia del récord de cualquier nacimiento, *casamiento* o defunción, después que sea certificada por el Comisionado de Sanidad o por la persona autorizada por él *constituirá evidencia prima facie* ante todas las cortes de justicia de los hechos que consten en la misma" .... [7] En cuarto lugar, asumiendo, aunque sin resolverlo, que la falta de los dos testigos durante la celebración del matrimonio, es una de las causas de nulidad concedidas por el Código Civil de Puerto Rico, dicha causa se referiría exclusivamente a las solemnidades prescritas para el momento de la celebración del matrimonio y no a las formalidades prescritas para la inscripción del mismo, que es un acto posterior, realizado por otro funcionario, ante el cual no están los contrayentes ni el oficiante o celebrante obligados a comparecer para convalidar la ceremonia matrimonial. [8] En quinto lugar, la única disposición de la anterior Ley para Establecer una Ley de Registro Civil referente a la negligencia en el desempeño de sus deberes oficiales de los encargados de los anteriores registros civiles es una imposición de multa, pero nada hay en dicha ley, que declare la

nulidad de la inscripción por faltas cometidas por los encargados de los anteriores registros civiles de los cuales se pudiera colegir la intención legislativa de llevar la causa de nulidad del matrimonio por cualquiera deficiencia cometida por un funcionario en la inscripción del mismo.

█ Como cuestión de evidencia, estamos satisfechos que en el juicio por separado se probó que la declaración jurada original y la nota o certificación de la celebración del matrimonio original de las cuales se habían tomado los datos para extender *in extractus* el. acta de matrimonio, habían desaparecido. Siendo esto así,. se podía probar por cualquiera otra prueba, la presencia de los dos testigos en la celebración del matrimonio. En este caso se consiguió la mejor evidencia posible, o sea, la declaración personal de dichos testigos.

█ En cuanto al tercer error relacionado con la posible nulidad del matrimonio porque de la prueba ofrecida no aparece que ninguno de los supuestos contrayentes firmaron el acta de matrimonio, el error es enteramente frívolo. Lo que firman los contrayentes es una declaración jurada donde constan los datos sobre su persona, edad, estado civil, filiación, matrimonios anteriores, hijos habidos de matrimonios anteriores, la cual entregan al oficiante o celebrante antes de celebrarse el matrimonio. Ni el Código Civil de Puerto Rico de 1902 ni la Ley para Establecer una Ley de Registro Civil del 1911 exigían que los contrayentes firmaran el certificado de matrimonio que expedía el oficiante o celebrante al dorso de la declaración jurada, o que firmaran el acta de matrimonio que extendía el Encargado del Registro Civil. Tal es todavía el estado de derecho en Puerto Rico.

*Debe confirmarse la sentencia apelada.*

El Juez Asociado Sr. Negrón Fernández no intervino.