RUBÉN BERRÍOS MARTÍNEZ, demandante y recurrido, *v.* UNIVERSIDAD DE PUERTO RICO y CONSEJO DE EDUCACIÓN SUPERIOR, demandados y recurrentes.

*Número:* R-76-349     *Resuelto:* 28 de abril de 1978

*Géigel, Silva, Soler Favale & Arroyo,* abogados de los recurrentes; *Raúl Tirado Rodríguez,* abogado del recurrido.

### RESOLUCIÓN

A la solicitud de revisión en el recurso de epígrafe no ha lugar.

Lo acordó el Tribunal y certifica el Secretario. El Juez Asociado Señor Martín emitió voto disidente al cual se une el Juez Asociado Señor Dávila. El Juez Asociado Señor Rigau no intervino y el Juez Asociado Señor Negrón García se inhibió.

(Fdo.) Ernesto L. Chiesa

*Secretario*

—O—

Voto disidente emitido por el Juez Asociado Señor Martín al cual se une el Juez Asociado Señor Dávila.

San Juan, Puerto Rico, a 28 de abril de 1978

Yo expediría el auto para revisar la sentencia dictada por el tribunal de instancia que revocó la Resolución del Consejo de Educación Superior que a su vez confirmó la determinación del Rector del Recinto de Río Piedras de la Universidad de Puerto Rico de no conceder al recurrido un nuevo nombramiento como Catedrático Auxiliar de la Facultad de Derecho para el año académico 1971-72.

La expedición del auto hubiera dado al Tribunal la oportunidad de tener ante sí todos los documentos que aparecen en el expediente del caso y que fueron objeto de examen, estudio, consideración y análisis a través de todo el procedimiento administrativo que se siguió en este caso.

Este caso, a mi juicio, plantea básicamente los derechos de un catedrático nombrado con carácter de probatorio, a la luz de las normas y procedimientos existentes en la Universidad de Puerto Rico para la evaluación y concesión de permanencia en su puesto docente. Véanse por ejemplo: *Perry* v. *Sindermann*, 408 U.S. 593 (1972); *Board of Regents of State Colleges et al.* v. *Roth*, 408 U.S. 564 (1972); *Shelton* v. *Tucker*, 364 U.S. 479 (1960).

Por ser casi imposible anticipar un criterio sobre la controversia planteada exclusivamente a base de la sentencia del tribunal de instancia y ante la inexistencia de doctrina de este Tribunal sobre el particular, me parece de rigor el que nos pronunciemos sobre ello para dejar sentado cuál habrá de ser la ingerencia de los tribunales en casos como éste. Especialmente debe quedar aclarada la disposición que del caso hace el tribunal de instancia. Al quedar sin efecto la determinación inicial del Comité de Permanencia de la Facultad

de Derecho que acordó recomendar al Rector que no se renovara el contrato de un año de catedrático auxiliar probatorio al Profesor Rubén Berríos Martínez, surgen las siguientes interrogantes. ¿Puede ser sometido el Profesor Berríos a una nueva evaluación antes de que el Rector le extienda un nuevo nombramiento por un año adicional? ¿Queda obligado el Rector a nombrarle por un año adicional? ¿Luego de nombrado por un año adicional queda el Profesor Berríos sujeto a una evaluación adicional para decidir sobre su permanencia? ¿Está el Tribunal insinuando como cuestión de derecho que luego de nombrado por un año adicional, que sería su quinto año, tiene el derecho a la permanencia independientemente de la evaluación a que pueda ser sometido durante ese último año de probatoria? ¿Se justifica que se reponga al Profesor Berríos con carácter retroactivo?

Lógicamente la Universidad de Puerto Rico queda sin una orientación debida en cuanto a qué determinaciones tomar con respecto a la sentencia del tribunal de instancia.

Los hechos que constituyen el trasfondo de este caso pueden resumirse como sigue. Berríos comenzó a prestar servicios en la Facultad de Derecho de la Universidad de Puerto Rico, como catedrático auxiliar con carácter probatorio el día 1 de julio de 1967 mediante nombramiento extendídole por el Rector del Recinto de Río Piedras. Se le asignaron los cursos de Introducción al Derecho, de Derecho Internacional Público y de Daños y Perjuicios. Su labor era de tarea completa.

Por ser de carácter probatorio su nombramiento queda sujeto a la disposición del Reglamento de la Universidad que exige que cada año el Decano de una Facultad "someterá al Rector un informe relativo a la naturaleza y calidad de los servicios prestados por el personal de nombramiento probatorio, y las recomendaciones que al propósito estime oportunas. En los casos en que estos informes y recomendaciones sean desfavorables, se enviará copia al personal afectado."

Reglamento Universidad de Puerto Rico, promulgado el 23 de junio de 1950. Aunque dicho reglamento habría de ser suplantado por el Reglamento General que requiere la Ley Núm. 1 de 20 de enero de 1966, 18 L.P.R.A. sec. 601 *et seq.*, especialmente la sec. 602(e)(5), aquél está aún en vigor por no haberse aprobado el segundo.

A la fecha en que fue designado Berríos catedrático auxiliar estaban en vigor las Normas y Procedimientos para la Evaluación y Concesión de Permanencia al Personal Docente de la Universidad de Puerto Rico, aprobadas el 18 de noviembre de 1964 por la Junta Universitaria. Véase Certificación Núm. 22 (año 1964–65), Junta Universitaria, Universidad de Puerto Rico, expedida en 25 de noviembre de 1964. Unas normas sustancialmente iguales habían sido aprobadas por el Senado Académico del Recinto de Río Piedras en 6 de febrero de ese mismo año.[1] Dichas Normas disponían que no cobrarían vigencia hasta tanto fueren aprobadas por el Consejo Superior de Enseñanza. A pesar de que el Consejo Superior nunca actuó sobre las Normas aludidas las mismas fueron consideradas durante el tiempo a que se contraen las actuaciones en este caso como Normas *de facto*, y las autoridades universitarias cumplían con ellas con el beneplácito de los catedráticos probatorios.

Conforme lo disponen las Normas de la Junta Universitaria, el Comité de Permanencia estaría integrado por el Decano como presidente *ex officio* y un número de miembros según lo determinara la facultad, electos por ésta de entre sus profesores con nombramiento permanente y con tarea completa. El Comité habría de hacer dos evaluaciones obligatorias exhaustivas sobre la competencia del profesor y todas

---

[1] La Facultad de Derecho adoptó en 28 de febrero de 1968 unas normas de evaluación para la concesión de permanencias, sustancialmente iguales a las de la Junta Universitaria. El entonces Rector del Recinto de Río Piedras, Abrahán Díaz González las creyó excelentes y las circuló a las otras facultades.

aquellas adicionales que estimare necesarias. El primer informe obligatorio sería antes de terminar el primer semestre del segundo año en que el profesor prestara servicios. El referido informe deberá expresar la recomendación del Comité sobre la deseabilidad de extender un nuevo nombramiento. El Decano de la Facultad formulará su propia recomendación al Rector del recinto, conforme lo disponía el Reglamento. Las evaluaciones y recomendaciones contenidas en ese primer informe se basarán, entre otros factores, según las Normas señaladas, en los siguientes:

1. La capacidad del profesor para la enseñanza, la investigación y la creación.
2. El cumplimiento de sus deberes.
3. La preparación y mejoramiento académico.

El segundo informe obligatorio sería durante el segundo semestre del cuarto año de servicios, en los casos en que el profesor fuere candidato a la permanencia a la terminación del siguiente año académico, que sería su quinto año. Los factores que entran en juego en la segunda evaluación comprenden los ya mencionados para la primera evaluación. Pero, en adición, se considerarán, entre otros, los siguientes aspectos:

1. Publicaciones.
2. Trabajos de investigación y de creación.
3. Servicios prestados a la Universidad.
4. Honores y reconocimientos.
5. Opiniones fundamentadas y sustanciadas de sus compañeros claustrales.

Proveen, además, las Normas que si la denegación de la permanencia ha de ser recomendada, el Decano de la Facultad correspondiente lo comunicará por escrito al interesado al final de su cuarto año de servicios.

La sentencia del tribunal revela que la evaluación fue hecha por el Comité de Permanencia al final del cuarto año de probatoria. Su dictamen adverso fue comunicado al Rector

quien decidió no renovar el contrato del Profesor Berríos. Tal dictamen fue confirmado por el Presidente de la Universidad y luego por el Consejo Superior de Enseñanza. La sentencia está fundamentada básicamente en la opinión disidente del Profesor Efraín González Tejera en su carácter de miembro del Comité de Permanencia, y en la opinión disidente del Dr. Roberto Busó, miembro del Consejo Superior de Enseñanza. No hemos tenido el beneficio de examinar tales opiniones disidentes, ni el beneficio de examinar todos los documentos que forman parte del expediente administrativo. Reitero pues que en esas circunstancias no puedo formar criterio en cuanto a si la sentencia del tribunal de instancia encuentra apoyo en la totalidad de la evidencia.

Es sabido que el alcance de la revisión judicial de las determinaciones de agencias administrativas se limitan a cuestiones de derecho, siendo una cuestión de derecho el determinar si la decisión del organismo administrativo está sostenida por evidencia sustancial, tomando el récord en su totalidad. Véanse *Vélez Quiñones* v. *Srio. de Instrucción*, 86 D.P.R. 755, 760–761 (1962); *Medina* v. *Pons*, 81 D.P.R. 1, 8 (1959); *López* v. *Muñoz, Gobernador*, 80 D.P.R. 4, 7–8 (1957); *Eastern Sugar Associates* v. *Junta Azucarera*, 77 D.P.R. 374, 386 (1954).

La función de este Tribunal en un caso como el de autos, no es la de revisar la decisión de la agencia administrativa en cuestión, sino revisar la decisión del tribunal de instancia, el que ya hizo una determinación en torno a la apreciación de la prueba que hiciere el organismo administrativo. Para ello es necesario aplicar la norma de evidencia sustancial a base de la totalidad del récord. *Rodrigo* v. *Tribunal Superior*, 101 D.P.R. 151, 155 (1973), citando de *Universal Camera Corp.* v. *N.L.R.B.*, 340 U.S. 474, 490–491 (1951).

Por otro lado debe reconocerse que, en ausencia de violaciones a derechos constitucionales, los tribunales únicamente deben intervenir en la revisión de actuaciones de organismos

educativos cuando son patentemente arbitrarias o carecen de base racional. Esta función debe realizarse con suma cautela ya que los jueces no cuentan con la información ni el peritaje (*expertise*) para revisar decisiones sobre evaluaciones de personal docente. Las cortes no son los organismos apropiados para administrar el sistema educativo ni para resolver los conflictos que surgen de la operación diaria de los centros de enseñanza, a menos que se infrinjan directamente valores constitucionales fundamentales. Véanse *Carpenter* v. *City of Greenfield School District No. 6*, 358 F.Supp. 220, 226 (1973); *Orr* v. *Trinter*, 444 F.2d 128 (1971); *Epperson* v. *Arkansas*, 393 U.S. 97, 104 (1968); *Developments in the Law—Academic Freedom*, 81 Harv. L. Rev. 1045, 1051–1055 (1968). Debe señalarse que el tribunal de instancia no encontró violaciones a los derechos constitucionales del Profesor Berríos.

Siendo de carácter subjetivo los criterios de evaluación contenidos en las Normas y Procedimientos para la Evaluación y Concesión de Permanencia al Personal Docente de la Universidad de Puerto Rico, citadas precedentemente, debe darse gran peso al juicio de las personas que en primera instancia tienen la responsabilidad de formular conclusiones sobre ellas a menos que tal juicio fuese claramente arbitrario o que no encuentre apoyo en la evidencia.

En mérito de lo expuesto precedentemente, y sin ánimo de expresar criterio sobre los méritos de este caso en particular, reitero mi opinión de que este Tribunal debió haber expedido el auto en este caso para examinar el récord administrativo en su totalidad y trazar las pautas que deben regir a los organismos de la Universidad de Puerto Rico que entienden en la evaluación del personal docente; y especialmente para que la disposición que hizo de este caso el tribunal de instancia pueda quedar aclarada a los fines de que dicha institución pueda tomar las providencias que fueren menester.