EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| PACIV, Inc.<br><br>    Demandante-Peticionario<br><br>v.<br><br>Pablo O. Pérez Rivera<br><br>    Demandado-Recurrido | Certiorari<br><br>2003 TSPR 84<br><br>159 DPR \_\_\_\_ |

Número del Caso: CC-2002-353


Fecha: 19 de mayo de 2003


Tribunal de Circuito de Apelaciones:
                    Circuito Regional IV


Juez Ponente:
                    Hon. Jocelyn López Vilanova

Abogado de la Parte Peticionaria:
                    Lcdo. Antonio Cuevas Delgado


Abogados de la Parte Recurrida:
                    Lcdo. Ramiro Lladó Martínez
                    Lcda. Lissette Marín Aponte


Materia: Injunction Preliminar, Permanente y Violación de Contrato

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

PACIV, Inc.

   Demandante Peticionario

     v.                        CC-2002-353    Certiorari

Pablo O. Pérez Rivera

   Demandado Recurrido

SENTENCIA

San Juan, Puerto Rico a 19 de mayo de 2003.

Paciv Inc. nos solicita que revoquemos una decisión del Tribunal de Circuito de Apelaciones que invalidó un acuerdo de no competencia, que había suscrito un ex empleado de ellos, por ser el mismo excesivamente amplio tanto en la extensión geográfica como en las funciones vedadas. El recurso nos permite aplicar la normativa de <u>Arthur Young v. Vega III</u>, 136 D.P.R. 157 (1994), y aclarar el alcance de sus pronunciamientos.

I

Paciv, Inc. (en adelante, "Paciv") es una compañía dedicada a proveer servicios técnicos de

ingeniería en las áreas de automatización de procesos, controles, instrumentación y validación de sistemas computarizados. Su clientela consiste en farmacéuticas reguladas por la agencia federal "Food and Drug Administration" (en adelante, la F.D.A.), compañías de manufactura y plantas de tratamientos de aguas, localizadas a través de toda la isla.

En 1999, Pablo O. Pérez Rivera (en adelante, "Pérez Rivera") suscribió un contrato de empleo con Paciv para trabajar como ingeniero de sistemas de programas de computadoras. Su labor consistía en prestar servicios y consultoría a los clientes de Paciv en el área de validaciones de sistemas computarizados. El contrato suscrito incluía, como condición para obtener el empleo, la suscripción de un acuerdo de no competencia mediante el cual Pérez Rivera se comprometió a no competir con Paciv en la eventualidad de que renunciara a su empleo.

En mayo de 2001, Pérez Rivera renunció a su empleo y, posteriormente, aceptó una posición como Ingeniero de Sistemas en la Compañía Foster Wheeler, firma dedicada a la prestación de servicios técnicos en el área de validaciones de sistemas computarizados. Esta compañía le proveía servicios a farmacéuticas y otras industrias reguladas por la F.D.A. Enterado de esta decisión, Paciv incoó una demanda en contra de Pérez Rivera por incumplimiento de contrato, solicitando un interdicto permanente y el cumplimiento específico del acuerdo de no competencia.

Instó además una reclamación de daños por incumplimiento del contrato o, en la alternativa, una reclamación de daños por responsabilidad extracontractual.[1] Alegó que Pérez Rivera incumplió con el acuerdo de no competencia, suscrito por éste, al comenzar a trabajar con Foster Wheeler, compañía que brindaba servicios análogos a los brindados por Paciv. Por su parte, Pérez Rivera alegó que el acuerdo de no competencia era nulo por no cumplir con los requisitos necesarios para su validez, según esbozados por nuestra jurisprudencia. Alegó además que dicho contrato era violatorio de su derecho a escoger libremente su profesión consagrado en la sección 16 del Art. II de nuestra Constitución.[2]

Tanto el Tribunal de Primera Instancia como el Tribunal de Circuito de Apelaciones entendieron que el acuerdo era nulo a la luz de nuestros pronunciamientos en Arthur Young v. Vega III, *supra*. Ambos foros concluyeron que las cláusulas contenidas en el acuerdo eran excesivamente amplias. Señalaron que el área geográfica no estaba limitada a la estrictamente necesaria, las cláusulas referentes a funciones que le prohibieron a Pérez Rivera

---

[1] Sostuvo que Pérez Rivera violó el deber de actuar conforme al principio de buena fe al no guardar fidelidad hacia su antiguo patrono y defraudar la confianza conferida. Por estimar que es improcedente esta causa de acción en daños declinamos incursionarnos en la misma.

[2] Además presentó una reconvención en la que alegó, entre otras cosas, que fue víctima de un despido constructivo por lo que era acreedor de los beneficios otorgados por la Ley Núm. 80 del 30 de mayo de 1976; y que se le adeudaba una cantidad de dinero en virtud de la Ley Núm. 379 del 15 de mayo de 1948.

ejercer eran demasiado amplias y la prohibición en cuanto a la clientela que éste podía atender no se limitaba a aquella que fue atendida por el empleado en tiempo inmediatamente anterior a su renuncia, todo en contravención con lo dispuesto en Arthur Young v. Vega III, *supra*. Por lo tanto, el acuerdo era contrario a la buena fe por restringir de forma excesiva e injustificada, la libertad de Pérez Rivera de escoger su profesión. Consecuentemente, declararon la nulidad del acuerdo de no competencia suscrito entre las partes y desestimaron la demanda.

Oportunamente, Paciv recurrió ante nos alegando que incidió el Tribunal de Circuito de Apelaciones al invalidar el acuerdo de no competencia por no cumplir con los requisitos necesarios para su validez. Sostuvo que los tribunales inferiores erraron al declarar nulo el acuerdo de no competencia fundamentándose en que el mismo no contenía una disposición específica en cuanto a los clientes afectados. Argumentó que según nuestros pronunciamientos en Arthur Young v. Vega III, *supra*, la cláusula dirigida a limitar el alcance del acuerdo de no competencia, puede limitar el área geográfica o limitar a la clientela afectada, pero no es necesario que existan en el acuerdo ambas limitaciones para que el mismo sea válido.

Sostuvo además que los tribunales inferiores incidieron al declarar nulo el acuerdo en controversia debido a que el mismo contenía una prohibición

excesivamente amplia en cuanto a las funciones en que se podía desempeñar el empleado. Su contención se circunscribe a que las cláusulas del acuerdo en controversia limitaban al empleado a ejercer funciones similares a las desempeñadas por éste para la empresa, siendo esto cónsono con lo dispuesto por este Tribunal. Sostuvo además que erró el tribunal inferior al declarar nulo el acuerdo de no competencia al determinar que la limitación en cuanto al área geográfica a la que se extiende el acuerdo es excesivamente amplia y no se limita a la estrictamente necesaria, sin antes escuchar prueba en cuanto a la necesidad del área impuesta para evitar la competencia real con el patrono.

Luego de expedir el auto solicitado y examinar las comparecencias de las partes, resolvemos.

II

En síntesis, la controversia que nos ocupa se circunscribe a determinar si el acuerdo de no competencia suscrito entre Pérez Rivera y Paciv cumple con los requisitos necesarios para la validez de estos contratos.

En <u>Arthur Young v. Vega III,</u> *supra*, nos expresamos con aprobación en torno a la validez de los acuerdos de no competencia. No obstante, sujetamos la validez de los mismos al cumplimiento de ciertos requisitos. En esa ocasión, fuimos enfáticos al expresar que la ausencia de alguno de los requisitos tendrían como consecuencia la **nulidad** del acuerdo, por ser además de "contrarios a la

buena fe contractual, violadores del orden público por restringir de forma excesiva e injustificada la libertad del trabajo del empleado y la libertad de selección del público en general". *Supra,* a la pág. 177. Así pues, claramente expresamos que "en vez de modificar la voluntad de las partes para ajustarla a normas razonables, **se declarará nulo todo pacto de no competencia que no cumpla con las condiciones anteriores.**" *Énfasis suplido, supra.*

La validez de los acuerdos de no competencia depende pues del cumplimiento de los requisitos establecidos por esta Curia. Dichos criterios responden al reconocimiento de que, a pesar que en Puerto Rico rige el principio de la libertad de contratación, existe la necesidad de asegurarnos que estos contratos sean conformes al principio de buena fe y no restrinjan injustificadamente la libertad de toda persona a escoger su empleo.

En primer lugar, establecimos que el patrono que interesa pactar con el empleado un acuerdo de no competencia tiene que tener un interés legítimo en dicho acuerdo. Es decir, a través de este contrato el patrono persigue la protección de su negocio de la posible competencia que pueda crear su antiguo empleado. De no suscribir este acuerdo, el patrono podría ver su negocio sustancialmente afectado. Es necesario pues que el empleado, por la posición que ostenta en la empresa, esté facultado para efectivamente competir con su patrono una vez haya abandonado la empresa.

En segundo lugar, el alcance de la prohibición establecida en este acuerdo debe corresponder a dicho interés en cuanto a (1) objeto, (2)término y (3) lugar de la restricción o clientes afectados por la misma.

En cuanto a este aspecto expresamos que el objeto se debe limitar a actividades similares a las efectuadas por el empleado y el término no puede ser mayor de doce meses. Establecimos además que el propio acuerdo tiene que especificar los límites geográficos o los clientes afectados por la prohibición. Así expresamos que:

> "[e]n cuanto al área geográfica a la que aplica la restricción, ésta debe limitarse a la estrictamente necesaria para evitar la competencia real entre el patrono y el empleado. Cuando la prohibición de competencia se refiere a los clientes, debe referirse sólo a aquellos que el empleado atendió personalmente durante un período razonable de tiempo antes de renunciar o en un período inmediatamente anterior a la renuncia, y que al hacerlo todavía eran clientes del patrono." Énfasis suplido, *supra*, a la pág. 176.

Por último, establecimos que estos contratos tienen que constar por escrito, el patrono tiene que ofrecer una contraprestación a cambio y que, como todo contrato, los mismos tienen que contener consentimiento, objeto y causa.

A la luz de esta normativa pasemos a analizar el contrato que tenemos ante nos.

### III

En la situación de autos, las partes suscribieron un acuerdo de no competencia el cual cumplía con algunos de los requisitos exigidos por la jurisprudencia como, por ejemplo, que el mismo contaba por escrito y el límite de

tiempo se circunscribía a doce meses. Sin embargo, dicho contrato no cumplía con otros de los requisitos requeridos para su validez.

Como mencionáramos anteriormente, la ausencia de cualesquiera de los requisitos establecidos por esta Curia conlleva la nulidad del acuerdo sin la posibilidad de permitir la modificación de la voluntad de las partes para ajustar el contrato a las normas establecidas. Esto significa que la cláusula de separabilidad contenida en el contrato que nos ocupa,[3] por éste ser un acuerdo de no competencia, no tiene el efecto de salvar aquellas cláusulas que cumplen con nuestros pronunciamientos. Una vez se incumple con alguno de los requisitos establecidos en nuestra jurisprudencia, el acuerdo es nulo en su totalidad.

Debido a que la falta de cualquiera de los requisitos, por nosotros impuestos, conlleva la nulidad del acuerdo, en el caso de autos nos es forzoso concluir que el acuerdo de no competencia suscrito entre las partes es nulo. Veamos.

En primer lugar, como señaláramos anteriormente, la prohibición objeto del contrato se tiene que limitar a actividades similares a las efectuadas por el empleado para la empresa. En el caso de autos, la prohibición en cuanto

---

[3] "It is the desire of the parties that this agreement be enforced to the fullest extent under the laws of the Commonwealth of Puerto Rico. Accordingly if any particular portion of this agreement is adjudicated to be unenforceable than that portion shall be severed from the remainder of the agreement shall remain enforceable."

a las actividades en las que se podía desempeñar Pérez Rivera durante el año de vigencia del acuerdo de no competencia resultó ser muy amplia. El acuerdo comienza especificando los servicios que no puede prestar el empleado. Las cláusulas referentes a la limitación del empleado en cuanto a las actividades que no podría realizar leen como sigue:

> "…the term "not compete" as used herein shall mean that the undersigned shall not directly or indirectly engage in the business or substantially the same business activity generally described as:
> a. PACIV INC, Process Automation, Controls, Instruments and Computarized System Validations to Pharmaceutical, Medical Devices and/or any other FDA regulated industries.
> b. Consulting services in the area of process automation, controls, system integration, instrumentation, and/or computerized system validation to the pharmaceutical, medical devices and /or any other FDA regulated industries.
> c. Development, installation, maintenance, execution, and consulting of process automation, controls, system integration, instrumentation, and/or computerized system validation to the pharmaceutical, medical devices and/or any other FDA regulated industries."

Como podemos apreciar estas cláusulas enumeran actividades relacionadas con el proceso de validación de procesos de automatización, control o instrumentos de sistemas computarizados en cualquier industria regulada por la F.D.A. El acuerdo le impide además ofrecer servicios de consultoría, desarrollo, instalación, mantenimiento y ejecución de estos sistemas a farmacéuticas u otras industrias reguladas por la F.D.A. Pérez Rivera ofrecía servicios y consultoría en el área de validaciones de

sistemas computarizados.  Se podría argumentar que esas son actividades similares a las efectuadas por el empleado. Sin embargo, el acuerdo no se circunscribe a estas funciones similares sino que también recoge una prohibición para desempeñarse en otras capacidades tales como dueño, oficial, director, agente, consultor, socio, accionista y hasta empleado, de una compañía que compita con el patrono.[4]

Es decir, la limitación dejó de circunscribirse a actividades similares del empleado y fue más allá, imponiéndole restricciones en cuanto a su ejecutoria en otras capacidades.

Por otro lado, al analizar estas cláusulas detenidamente nos damos cuenta que las mismas también establecen una prohibición en cuanto a los clientes que el empleado puede atender.[5] El contrato no se limita a impedir que el empleado intervenga con los clientes con los que personalmente haya trabajado durante un periodo razonable de tiempo antes de su partida, sino que la prohibición incluye a todas las industrias reguladas por la F.D.A. o

---

[4] "Pablo O. Pérez, agrees that he will not participate as an owner, officer, director, employee, agent, consultant, partner, or stockholder (except as passive stockholder in a publicly owned company) in any firm or venture that competes with the Company."

[5] No estamos diciendo que para que estos contratos sean válidos tienen que contener una disposición referente a los clientes. En Arthur Young v. Vega, supra, a la pág. 176, indicamos que respecto "al alcance de la prohibición, el contrato debe especificar los límites geográficos o los clientes afectados." Sin embargo, en el caso de autos, existen ambas limitaciones (aunque en el caso de la clientela no se hace directa y expresamente) por lo que ambas tienen que cumplir con lo dispuesto en la jurisprudencia.

sea incluye hasta los clientes potenciales de Paciv. Según el acuerdo, el empleado no podría proveerle servicios similares a los que provee la demandante no sólo a los actuales clientes de la demandante que hayan sido atendidos por Pérez Rivera en un tiempo razonablemente anterior a su partida, sino que se extiende la prohibición a toda industria que esté regulada por la F.D.A., esto en contravención con las limitaciones impuestas por este Tribunal.

De su faz, la prohibición en cuanto a las funciones que puede realizar el empleado es excesivamente amplia. No sólo pretende extender la prohibición a funciones similares a las efectuadas por el empleado, sino que también a las capacidades en las que éste puede ejercer. Además dicha prohibición no se limita a aquella clientela que el empleado haya atendido personalmente en el periodo inmediatamente anterior a su renuncia y que al momento de la misma todavía eran clientes del patrono, sino que incluye a clientes potenciales.

Además, el acuerdo que tenemos ante nos, le impone una prohibición al empleado a interferir de forma directa o indirecta con PACIV o con cualquiera de sus clientes, suplidores, consultores o empleados que tengan una relación contractual o de otro tipo con la empresa.[6] La cláusula no

---

[6] "During the term of this agreement and, unless this Agreement is terminated, for a period of one (1) year thereafter in any of the Municipalities of the Commonwealth of Puerto Rico, Pablo O. Pérez, shall not interfere

especifica que sólo se refiere a aquellos clientes que el empleado atendió personalmente en un término razonable anterior a su renuncia y que al renunciar todavía éstos eran clientes de Paciv. Una vez más, el acuerdo no limita los clientes a aquellos especificados en la jurisprudencia.

La prohibición que impone esta cláusula es muy abarcadora. Además de incumplir con lo claramente establecido por este Tribunal, restringe excesiva e injustificadamente la libertad de selección del público en general. Esto último, es una de las razones por las cuales este Tribunal impuso una limitación a la prohibición dirigida a restringir los clientes que el ex empleado puede atender.

Por las razones esbozadas anteriormente, nos es forzoso concluir que las cláusulas discutidas son contrarias a lo claramente establecido por esta Curia. Consecuentemente, el acuerdo de no competencia es nulo.[7]

---

directly or indirectly with the Company, disrupt or attempt to disrupt the relationship contractual or otherwise, between the Company and any customer, client, supplier, consultant or other employee of the Company."

[7] PACIV aduce que el tribunal apelativo erró al declarar que la limitación geográfica, la cual extendía la prohibición a todo Puerto Rico, de por sí era muy amplia sin darle la oportunidad a la parte de presentar prueba en cuanto a que dicha limitación era la estrictamente necesaria para protegerse del daño sustancial al negocio ocasionado por una competencia real y efectiva por parte del empleado. Debido a que el acuerdo de no competencia carece de otros requisitos necesarios para su validez y consecuentemente es nulo no hay razón por la cual nos tengamos que expresar en torno a este señalamiento.

IV

Nuestra Constitución, en su Art. II sec. 16, claramente reconoce el derecho de todo trabajador a escoger libremente su ocupación y a renunciar a ella. Es por esta razón, que este Tribunal, aunque validó los acuerdos de no competencia al reconocer que en Puerto Rico rige la libertad de contratación, sujetó su validez al cumplimiento de ciertos requisitos para así proteger la libertad del empleado a escoger su trabajo. Además quiso proteger, al imponer estos requisitos, la libertad de selección del público en general.

El contrato aquí analizado impone unas trabas injustificadas a este derecho al: (1) evitar que el trabajador se desempeñe en un sinnúmero de funciones dentro de la profesión que ha escogido y para la cual está capacitado; (2) imponer trabas en cuanto a las capacidades en las que se puede desempeñar y;(3) al imponer una prohibición general en cuanto a la clientela a la que puede brindarle sus servicios.

En Arthur Young v. Vega III, *supra*, aunque validamos estos acuerdos lo hicimos sujeto al cumplimiento de unos requisitos que impusimos con el propósito de evitar que estos acuerdos tuviesen el efecto de coartar por completo la libertad del empleado a escoger y ejercer su profesión. El acuerdo suscrito por las partes en el caso de autos no cumple con los requisitos requeridos para la validez del mismo. Este acuerdo de su faz va en contravención con lo

que hemos establecido. Estamos ante un acuerdo que claramente limita injustificadamente la libertad del individuo a ejercer su profesión, y al público el derecho a la selección, contrario a lo que quisimos evitar, razón por la cual impusimos una serie de requisitos esenciales para determinar la validez de estos acuerdos.

Por las razones antes expuestas, procede confirmar el dictamen del tribunal apelativo declarando nulo el acuerdo de no competencia y consecuentemente desestimando la acción exigiendo el cumplimiento específico o los daños por incumplimiento del mismo.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López emitió Opinión Disidente. Los Jueces Asociados señor Corrada del Río y señor Rivera Pérez no intervinieron.


                              Patricia Otón Olivieri
                           Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

PACIV, Inc.,

    Demandante-Peticionaria

      v.                CC-2002-353   CERTIORARI

Pablo O. Pérez Rivera

    Demandado-Recurrido

OPINIÓN DISIDENTE EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 19 de mayo de 2003

**En el día de hoy una mayoría de los integrantes de este Tribunal resuelve que el acuerdo de no competencia aquí en controversia adolece de nulidad por incumplir varios de los requisitos establecidos en <u>Arthur Young & Co.</u> v. <u>Vega III,</u> 136 D.P.R. 157 (1994). Por entender que los requisitos esbozados en el precitado caso <u>no</u> pueden ser aplicados de <u>forma mecánica</u> a la situación de hechos que hoy nos ocupa, disentimos.**

**I**

**Aun cuando reconocemos plenamente la sabiduría y validez de la norma esbozada en el caso <u>Arthur Young & Co.</u> v. <u>Vega III</u>, ante,                    nos**

preocupa sobremanera el hecho de que una mayoría de este Tribunal pretenda aplicarla de forma automática a todo tipo de acuerdo sin conocer ni analizar el interés del patrono en cuanto a las restricciones impuestas y sin detenerse a evaluar la legitimidad de tal interés. <u>A nuestro entender tal proceder no sólo es incorrecto, sino que, además, constituye una violación al debido proceso de ley, pues priva a una de las partes de su propiedad sin brindarle la oportunidad de ser oído</u>. <u>Veamos</u>.

Una correcta interpretación y aplicación del caso <u>Arthur Young & Co.</u> v. <u>Vega III</u>, ante, exige que, en la evaluación de un acuerdo de no competencia, los tribunales analicen, <u>en primer lugar</u>, la legitimidad del interés del patrono en dicho acuerdo, para luego evaluar si las prohibiciones impuestas se limitan a proteger tal interés o si, por el contrario, resultan ser tan excesivas que afectan irrazonablemente el interés público y el derecho al trabajo del empleado demandado. La determinación de tal legitimidad es <u>imprescindible</u>, pues constituye el punto de partida para el análisis de la validez de este tipo de acuerdo.[8] Si no conocemos cuál es el interés del patrono en el acuerdo pactado, resulta imposible determinar la legitimidad de tal interés y, <u>mucho menos,</u> evaluar si las

---

[8] Para ello, como veremos, es indispensable que se celebre una vista evidenciaria donde el tribunal tenga la oportunidad de recibir prueba tendente a demostrar la existencia de un interés apremiante de parte del patrono.

restricciones impuestas exceden la necesidad de protección del patrono demandante.

Dicho de otro modo, una vez evaluado el interés del patrono, si se determina que el mismo es uno legítimo, por estar dirigido a proteger su negocio de un perjuicio sustancial, entonces --y sólo entonces-- es que procede evaluar si el alcance del acuerdo bajo análisis es razonable en términos de tiempo, área geográfica, clientela restringida y funciones prohibidas. Por el contrario, si llegara a concluirse que el interés que persigue el patrono carece de legitimidad, y que el efecto que pretende evitarse no es uno sustancial, no será necesario continuar con el análisis de los demás requisitos.[9] Ello considerando que la evaluación de las referidas condiciones deberá hacerse a la luz del interés perseguido y la magnitud del perjuicio que se intenta evitar.

En cuanto a quién corresponde el peso de la prueba para demostrar la legitimidad del referido interés, somos del criterio que el mismo debe recaer sobre el patrono demandante. Es éste quien único puede presentar evidencia tendente a demostrar que por la naturaleza y las circunstancias particulares de su negocio necesita protegerse contra la competencia de un antiguo empleado y que las restricciones establecidas son las estrictamente

---

[9] William G. Porter II y Michael C. Griffaton, *Using Noncompete Agreements to Protect Legitimate Business Interests*, 69 DEF.COUNS.J 194, 195 (2002).

necesarias para alcanzar tal protección. Esto es precisamente lo que se desprende de un análisis de la jurisprudencia norteamericana sobre el tema: se evalúa la razonabilidad de las restricciones impuestas a base de la evidencia presentada por el patrono en cuanto a la legitimidad de su interés y la magnitud del perjuicio que se intenta evitar.[10]

Ciertamente, lo antes expuesto parece ser lo más razonable si consideramos que es el patrono quien se encuentra en una mejor posición para ilustrar al tribunal en cuanto al interés que pretendía proteger con la cláusula de no competencia. Siendo así, resulta evidente que es a

---

[10] Véase: Rem Metals Corp. v. Logan, 565 P.2d 1080, 1084 (Or. 1977)("[T]he burden of proof is upon the employer to establish the existence of "trade secrets," "information or relationships which pertain peculiarly to the employer," or other "special circumstances" sufficient to justify the enforcement of such a restrictive covenant."); Foti v. Cook, 263 S.E.2d 430, 433 (Va. 1980) ("[W]hether restrictive covenants in an employment contract will be enforced in equity depends upon the facts in the particular case, and that the burden is upon the plaintiff to prove the validity of the restraint."); Geocaris v. Surgical Consultants, Ltd., 302 N.W.2d 76, 77-78 (Wis. App. 1981) ("The employer has the burden of proving the reasonable necessity of the restraints. Whether a restraint is reasonably necessary has been held to be a question of law that must be resolved with reference to the facts of the particular case."); Iowa Glass Depot Inc. v. Jindrich, 338 N.W.2d 376, 381 (Iowa 1983) ("The burden of proving reasonableness is upon the employer who seeks to enforce such a covenant."); Dental East, P.C. v. Westercamp, 423 N.W.2d 553, 555 (Iowa App. 1988) ("The employer has the initial burden to show that enforcement of the covenant is reasonably necessary to protect its business."); Hopper v. All Pet Animal Clinic, Inc., 861 P.2d 531, 539 (Wyo. 1993) ("The initial burden is on the employer to prove the covenant is reasonable and has a fair relation to, and is necessary for, the business interests for which protection is sought.").

éste a quien le corresponde demostrar la existencia de circunstancias "especiales" que justifiquen el acuerdo pactado.

Con relación a los tipos de intereses que han sido considerados como "legítimos" por los tribunales se encuentran: (i) el interés que pueda tener el patrono en proteger las relaciones con sus clientes; (ii) el interés en evitar la pérdida de empleados "claves"; (iii) el interés en proteger información confidencial de la compañía; (iv) el interés en proteger la plusvalía del negocio; y (v) en retener a empleados que hayan recibido adiestramientos especializados o extraordinarios cuyo costo ha sido sufragado por la compañía.[11] William G. Porter II y Michael C. Griffaton, *Using Noncompete Agreements to Protect Legitimate Business Interests*, 69 Def. Couns. J 194, 195-96 (2002); Frank J. Cavico, *"Extraordinary or Specialized Training" as a "Legitimate Business Interest" in Restrictive Covenant Employment Law: Florida and National Perspectives*, 14 St. Thomas L. Rev. 53, 64 (2001). Véase, además: Harlan M. Blake, *Employee Agreements Not to Compete*, 73 Harv. L. Rev. 625 (1960).

Naturalmente, este listado es ilustrativo y no taxativo. Podrían existir infinidad de razones por las cuales un patrono desee utilizar los llamados "acuerdos de

---

[11] Adviértase que se trata de adiestramientos altamente especializados y no del proceso de aprendizaje que es simultáneo al ejercicio de cualquier oficio o profesión.

no competencia". Ello dependerá del tipo de negocio de que se trate y de las necesidades y particularidades propias de cada industria. A modo ilustrativo, podríamos tener una compañía de contabilidad que interese suscribir con sus empleados acuerdos de no competencia con el único fin de proteger las relaciones con sus clientes --como, en efecto, ocurrió en el caso de Arthur Young & Co. v. Vega III, ante,-- y otra, que se dedique a prestar servicios de ingeniería, que suscriba con sus empleados acuerdos de no competencia con el único propósito de evitar la competencia desleal entre su compañía y aquellos empleados a los cuales haya suministrado costosos adiestramientos en áreas altamente especializadas.

Como vemos distintas compañías, con distintas necesidades, pactan distintas prohibiciones de acuerdo a sus particulares circunstancias. Ello hace que sea imposible que todos los acuerdos de no competencia puedan ser interpretados o analizados del mismo modo o que en su interpretación puedan ser utilizados criterios rígidos o inflexibles.[12] Cada acuerdo es diferente, pues persigue objetivos diferentes y, por consiguiente, debe ser interpretado de modo diferente. No podemos pretender que cada uno de ellos pueda ajustarse a un molde prefabricado y

---

[12] Pensando precisamente en tales diferencias fue que en Arthur Young & Co. v. Vega III, ante, a la pág. 176, establecimos que los requisitos allí dispuestos debían ser evaluados "teniendo en mente la naturaleza de la industria involucrada y el posible interés público relacionado."

exigir que para su cumplimiento tengan que ser incluidas cláusulas, que por el tipo de negocio de que se trata, resulten ser innecesarias o, lo que es peor, inaplicables.

De lo anterior se desprende la necesidad de que cada restricción de competencia sea analizada a tenor con las circunstancias particulares de cada caso, tomando en consideración el tipo de negocio envuelto y la forma en que se maneja el mismo. <u>Es imposible que un tribunal pueda entrar a dilucidar la validez de una cláusula de no competencia sin conocer el interés del patrono en dicho acuerdo, o lo que es lo mismo, las razones que lo llevaron a buscar la protección de un acuerdo de no competencia</u>.

A poco que estudiemos los pronunciamientos emitidos por este Tribunal en <u>Arthur Young & Co.</u> v. <u>Vega III</u>, ante, notamos la imposibilidad de tal situación. Aun cuando en el precitado caso no se celebró una vista evidenciaria, donde la parte demandante tuviera la oportunidad de descargar su responsabilidad de demostrar la legitimidad de su interés, es evidente que sí nos preocupamos por conocer cuál era el interés de la compañía allí demandante. Específicamente señalamos que para comprender el interés del patrono, y la vulnerable posición en que se encontraba, era necesario que comprendiéramos la naturaleza de los servicios que ofrecían sus empleados. *Ibid*. a la pág. 177. Para ello estudiamos y analizamos cada una de las funciones que desempeñaban los contables de dicha firma, lo cual nos llevó a concluir que, en efecto, éstos se encontraban en una posición

privilegiada que les facultaba para competir efectivamente con su patrono. En dicho caso, según concluimos, el interés del patrono en el acuerdo pactado era, precisamente, proteger las relaciones profesionales de la compañía con sus clientes. Entendimos que tal interés era uno legítimo, pues su empleado, un contador público autorizado, tenía completo acceso a la información de los clientes de su patrono, establecía contacto personal con éstos y se daba a conocer profesionalmente entre ellos. Ante tales circunstancias, entendimos que la firma de contabilidad allí demandante se encontraba en una posición especialmente vulnerable a la pérdida de sus clientes.

Realizado este análisis, finalmente, concluimos que el interés que perseguía el patrono, en ese caso en específico, era uno legítimo y que, en efecto, ameritaba ser protegido. Una vez reconocido tal interés, entonces --y sólo entonces-- fue que pasamos a analizar si existía correspondencia entre ese interés y la prohibición pactada, específicamente en cuanto al objeto, término y lugar de la prohibición o clientes afectados.[13]

A diferencia de lo ocurrido en el caso <u>Arthur Young & Co.</u> v. <u>Vega III</u>, ante, donde dedicamos tres páginas de la Opinión allí emitida al análisis del interés del patrono en el acuerdo pactado, <u>en el caso de autos la Mayoría pretende</u>

---

[13] La única de estas condiciones que aplica de forma general a todo caso es la relativa al término de la restricción, la cual bajo ninguna circunstancia podrá exceder de doce (12) meses.

evaluar la validez de las cláusulas de competencia aquí en controversia sin apenas mencionar ni analizar dicho asunto. Es decir, ha aplicado al caso de marras los requisitos del caso Arthur Young & Co. v. Vega III, ante, sin una previa evaluación del interés del patrono. Tampoco ha estudiado las particularidades propias de la industria de que se trata o las funciones específicas que realizaba el empleado demandado.[14] No sabemos si el interés del patrono en el presente caso radica en proteger las relaciones con su clientela o impedir la competencia entre su compañía y aquellos empleados a quienes sufragó costosos adiestramientos en áreas altamente especializadas. Tampoco sabemos si estamos ante un caso donde se pretende proteger información confidencial o secretos de negocio.

Siendo así, repetimos, es imposible que podamos analizar la amplitud o adecuacidad de las restricciones pactadas. ¿Cómo saber si la prohibición en cuanto a actividades prohibidas es o no amplia si no hemos evaluado el tipo de función que realiza el empleado? ¿Cómo saber cuáles son los clientes a quienes debe aplicar la prohibición si ni siquiera sabemos qué es lo que se intenta proteger con la misma?[15]

---

[14] Entendemos que en el presente caso era indispensable que la Mayoría explicara, tal y como se hizo en Arthur Young & Co. v. Vega III, ante, las particularidades del negocio de que trata, pues, es evidente, que el mismo es diferente al negocio de la contabilidad analizado en el precitado caso.

La Mayoría, ciegamente, concluye que el contrato aquí en controversia adolece de nulidad por incumplir varios de los requisitos dispuestos para este tipo de contrato en Arthur Young & Co. v. Vega III, ante. Específicamente resuelve que la prohibición en cuanto a los clientes que el empleado puede atender es excesiva, pues no se limita a aquellos clientes del demandante que hayan sido atendidos por Pérez Rivera en un tiempo razonable anterior a su

---

[15] En cuanto a las restricciones relativas a los clientes prohibidos, en Arthur Young & Co. v. Vega III, ante, señalamos que ésta debe limitarse a los clientes que el empleado había atendido durante un periodo razonable de tiempo antes de renunciar o en un periodo inmediatamente anterior a la renuncia y que al hacerlo todavía eran clientes del patrono. Sin embargo, entendemos que éste requisito debe ser cualificado, pues no debería ser aplicado automáticamente a aquellos acuerdos donde el interés del patrono no esté relacionado con la protección de las relaciones de su compañía con sus clientes.

Ciertamente, en un caso como el de Arthur Young & Co. v. Vega III, ante, donde lo que se pretendía era proteger la clientela de la firma, sí hacía sentido que limitáramos la restricción a los clientes que el empleado había atendido personalmente. Sin embargo, si lo que se pretende proteger es otro tipo de interés --como por ejemplo secretos de negocio, información confidencial de la compañía o la inversión hecha por el patrono al sufragar adiestramientos altamente especializados--, entonces no haría sentido que limitáramos la restricción a los clientes que el empleado atendió personalmente antes de su renuncia.

A modo de ilustración, podemos mencionar el caso Aconi Telecommunications, Inc. v. Noa, 136 D.P.R. 579 (1994), donde entendimos que el patrono tenía un interés legítimo en proteger la inversión que hacía al sufragar adiestramientos especializados a sus empleados. Allí este Tribunal validó una cláusula de no competencia donde el empleado se comprometió a abstenerse de trabajar o prestar servicios "para otras empresas o personas cuyas operaciones, actividades y/o negocios" fueran similares a las de su patrono, sin pretender que la prohibición se limitara a ciertos clientes en específico.

partida, sino que se extiende a toda industria regulada por la F.D.A. Además, dispone que la prohibición en cuanto a las actividades en las que podía desempeñarse el empleado demandado durante el año de vigencia del acuerdo resultó ser muy amplia. ¿Cómo puede la Mayoría saber a cuáles clientes debe extenderse la prohibición si no conoce el interés del patrono en tal restricción? ¿Por qué se limita a aplicar mecánicamente los requisitos de Arthur Young & Co. v. Vega III, ante, a un caso donde está en juego una industria completamente diferente al negocio de la contabilidad?

En el presente caso es evidente que no procede despachar el análisis de este asunto con una simple aplicación automática de los criterios esbozados en Arthur, ante. Como señaláramos anteriormente, tenemos la obligación de analizar, en primer lugar, la legitimidad del interés del patrono para luego evaluar si existe correspondencia entre la restricción pactada y el interés protegido. Para ello, es indispensable que se celebre una vista evidenciaria donde el patrono tenga la oportunidad de expresarse en cuanto a la legitimidad del interés que pretendió proteger al suscribir con su empleado el acuerdo aquí en controversia y la adecuacidad de las restricciones impuestas.[16]

---

[16] Si nuestro análisis conlleva una evaluación del interés que pueda tener el patrono en el acuerdo pactado, entonces, es evidente, que estamos obligados a escucharlo para saber

Lo anterior entronca con los principios enunciados por este Tribunal en cuanto a que la "esencia del debido proceso de ley es que nadie sea privado de su propiedad sin darle la oportunidad de ser oído." Carrero Suárez v, Sánchez López, 103 D.P.R. 77, 78 (1974). Este derecho incluye, desde luego, la oportunidad de presentar evidencia. Pagán v. Registrador, 62 D.P.R. 594, 597 (1943). Sólo así se vería cumplida la máxima de que los tribunales tienen que velar que la interferencia con los intereses propietarios del individuo se haga a través de un procedimiento que en esencia sea justo y equitativo. Almonte v. Brito, res. el 2 de abril de 2002, 2002 T.S.P.R. 37; Rivera Rodríguez & Co. v. Lee Stowell, 133 D.P.R. 881, 887-88 (1993); Rodríguez Rodríguez v. E.L.A., 130 D.P.R. 562, 578 (1992), López Vives v. Policía de Puerto Rico, 118 D.P.R. 219 (1987).

## II

En el presente caso ambos foros apelados decretaron la nulidad del acuerdo de no competencia que hoy ocupa nuestra atención por entender que las restricciones impuestas eran excesivamente amplias, por cuanto no se limitó el área geográfica y tampoco se delimitó la clientela que le estaba vedada atender al empleado demandado. Dichos foros llegaron

_____

cuál es este interés. En cuanto a esto último debemos recordar el hecho de que existe abundante jurisprudencia norteamericana donde se ha expresado que el peso de la prueba para demostrar la legitimidad del referido interés recae sobre el patrono demandante.

a esta conclusión tras evaluar el lenguaje del contrato en cuestión, limitando su análisis al estudio *prima facie* de las cláusulas pactadas. Al así actuar fallaron no sólo al privar a PACIV de su derecho a ser oído y descargar su obligación de demostrar la legitimidad de su interés y la adecuacidad de las restricciones impuestas, sino, además, al no considerar las circunstancias particulares del caso ante nos.

En vista de lo antes expuesto, somos del criterio que, por las circunstancias particulares del presente caso, resulta indispensable que se ordene la celebración de una vista evidenciaria donde se le permita al patrono demandante presentar evidencia tendente a demostrar que al suscribir el contrato de no competencia aquí en controversia perseguía un interés legítimo y que las restricciones impuestas constituían las estrictamente necesarias para proteger su negocio de una competencia real y efectiva. <u>Así no se dispone y resuelve; es por ello que disentimos</u>.


FRANCISCO REBOLLO LÓPEZ
Juez Asociado