ACONI TELECOMMUNICATIONS, INC., demandante y recurrente, *v.* RAFAEL NOA y OTROS, demandados y recurridos.

*Número:* CE-94-19          *Resuelto:* 11 de julio de 1994

*Enrique J. Mendoza Méndez,* de *Mendoza & Baco,* abogado del demandante y recurrente; *Edwin L. Bello Rivera,* de

*Edwin L. Bello Law Offices*, abogados de los demandados y recurridos.

## SENTENCIA

Revisamos, mediante el mecanismo procesal decisorio de la orden de mostrar causa, una resolución emitida por el Tribunal Superior de Puerto Rico, Sala de Bayamón, mediante la cual dicho foro judicial se negó a conceder una petición de *injunction* preliminar, solicitada dentro de una acción denominada de "injunction, sentencia declaratoria, daños y perjuicios y cumplimiento específico de contrato"; radicada dicha acción por la aquí peticionaria Aconi Telecommunications, Inc. (en adelante Aconi) contra el codemandado Rafael Noa, su esposa Ana M. López y la sociedad legal de gananciales compuesta por ambos.

De la mencionada resolución surge, en síntesis y en lo pertinente, que: la peticionaria Aconi es una corporación que se dedica a ofrecer servicios de instalación y reparación de cuadros telefónicos desde hace catorce (14) años —en específico, cuadros telefónicos marca Rolm— industria que es competitiva y técnica que requiere una alta inversión de capital y en la cual los márgenes de ganancias son bajos; que el codemandado Rafael Noa fue empleado de Aconi por aproximadamente doce (12) años, habiendo comenzado como instalador-reparador y ascendiendo, según fue adquiriendo experiencia y ciertos cursos de adiestramiento especializado, hasta ocupar puestos de mayor jerarquía; que todos los adiestramientos especializados, que recibiera Noa en los Estados Unidos, fueron sufragados totalmente por Aconi; que previo a la asistencia a uno de esos adiestramientos altamente especializados en los Estados Unidos, el 2 de marzo de 1990, Noa firmó un contrato mediante el cual se comprometió, *en lo pertinente*, a que durante los nueves (9) meses siguientes a la fecha en que cesaran sus servicios para Aconi él se abstendría de traba-

jar, o prestar servicios, "para otras empresas o personas cuyas operaciones, actividades y/o negocios" (Memorial de la parte demandante, pág. 5) fueran en el mismo ramo que Aconi; que, antes de firmar el referido acuerdo, Noa fue informado por el gerente de operaciones de Aconi que, de no hacerlo, se "quedaría atrás" en la Compañía; y que luego de que Noa renunciara —de manera sorpresiva— a su empleo con Aconi, *inmediatamente* comenzó a prestarle servicios a empresas e instituciones que tenían cuadros telefónicos marca Rolm, de los cuales Aconi era el distribuidor exclusivo en Puerto Rico.

El foro de instancia denegó la solicitud de *injunction* preliminar no obstante entender que la cláusula de no competencia, aquí en controversia, era una válida en vista de que: la misma era por un período de tiempo razonable corto (nueve (9) meses); que Aconi tenía un interés legítimo en proteger su inversión; Noa era un empleado clave, y existía, en consecuencia, una "consideración valiosa como *quid pro quo* de la restricción de la libertad de contratación". Petición de *certiorari*, pág. 4. Razonó, sin embargo, el foro de instancia —*en apoyo de su decisión denegatoria*— que Aconi ejerció "presión indebida" sobre Noa para obligarlo a firmar el contrato. Dicha conclusión tiene como fundamento el hecho de que Noa fue informado, por el gerente de operaciones de Aconi, que si no aceptaba "quedaría atrás" en la Compañía. Inconforme, Aconi acudió —vía *certiorari*— ante este Tribunal imputándole al foro de instancia haber errado al así decidir.

Mediante resolución, de fecha 18 de marzo de 1994, le concedimos término a la parte demandada recurrida para que mostrara causa por la cual "no se deba expedir el auto solicitado y dictar Sentencia revocatoria de la resolución recurrida". La referida parte ha comparecido. Resolvemos.

## I

De entrada, procede señalar que el foro de instancia determinó que *no* existía problema alguno relativo al hecho de que, tratándose de que el remedio solicitado era extraordinario, la parte demandante tenía el peso de probar su procedencia conforme a los criterios establecidos en *P.R. Telephone Co. v. Tribunal Superior*, 103 D.P.R. 200 (1975); esto es, que Aconi había cumplido con dicha obligación. Véase, en adición, *García v. World Wide Entmt. Co.*, 132 D.P.R. 378 (1992).

En cuanto al asunto de la validez de la cláusula de no competencia, recientemente nos expresamos al respecto. En *Arthur Young & Co. v. Vega III*, 136 D.P.R. 157, 175 (1994), expresamos que, "considerando que en nuestro ordenamiento rige el principio de la libertad de contratación, *como regla general los acuerdos de no competencia son válidos*" (énfasis suplido), pero que, "considerando que todo contrato debe estar conforme al principio de la buena fe, [y] en ausencia de expresión legislativa al respecto, *la validez de las cláusulas de no competencia dependerá del cumplimiento de las condiciones siguientes*". (Énfasis suplido.) Íd:

> Primero, el patrono debe tener un interés legítimo en dicho acuerdo, esto es, que de no recibir la protección de una cláusula de no competencia, su negocio se vería sustancialmente afectado. La magnitud de este interés se medirá, entre otras cosas, a la luz de la posición del empleado dentro de la empresa. Esto es, que la existencia del interés del patrono estará directamente relacionada y dependerá de que el empleado, por la posición que asume en la empresa, esté facultado para competir de forma efectiva con su patrono en un futuro.
>
> Segundo, el alcance de la prohibición debe corresponder con el interés del patrono, en cuanto a objeto, término y lugar de restricción o clientes afectados. El objeto de la prohibición se debe limitar a actividades similares a las efectuadas por el patrono; no es necesario que se limite a las funciones específicas del empleado. El término de no competencia no debe excederse de doce (12) meses, entendiéndose que cualquier tiempo adicio-

nal es excesivo e innecesario para proteger adecuadamente al patrono. Por último, respecto al alcance de la prohibición, el contrato debe especificar los límites geográficos o los clientes afectados. En cuanto al área geográfica a la que aplica la restricción, ésta debe limitarse a la estrictamente necesaria para evitar la competencia real entre el patrono y el empleado. Cuando la prohibición de competencia se refiere a los clientes, debe referirse sólo a aquellos que el empleado atendió personalmente durante un período razonable de tiempo antes de renunciar o en un período inmediatamente anterior a la renuncia, y que al hacerlo todavía eran clientes del patrono. Estos elementos se evaluarán teniendo en mente la naturaleza de la industria involucrada y el posible interés público relacionado.

Tercero, el patrono debe ofrecer una contraprestación a cambio de la firma del acuerdo de no competir por parte del empleado. Esta contraprestación puede consistir, por ejemplo, en la obtención de un ascenso, de beneficios adicionales en el trabajo o del disfrute de cambios sustanciales de similar naturaleza en las condiciones de empleo. Incluso sería suficiente que un candidato obtenga el empleo deseado en la empresa. Sin embargo, no se admitirá como causa del acuerdo de no competencia la mera permanencia en el empleo.

Cuarto, los pactos de no competencia, como todo contrato, deben contar con los elementos esenciales para su validez: consentimiento, objeto y causa. Art. 1213 del Código Civil, 31 L.P.R.A. sec. 3391. Sin embargo, en este tipo de contratos seremos especialmente estrictos al asegurarnos de que el empleado firmó libre y voluntariamente el contrato de no competencia. No permitiremos coacción o presión indebida alguna por parte del patrono. Nada se ha alegado en el caso de marras que nos permita inferir que hubo tal coacción o presión indebida. Esta consideración, sin embargo, es innecesaria a la luz de lo que resolvemos a continuación sobre la validez del contrato.

Finalmente, es indispensable que los pactos de no competencia consten por escrito.

En la medida en que estos contratos incumplan las condiciones anteriores, se considerarán, además de contrarios a la buena fe contractual, violadores del orden público por restringir de forma excesiva e injustificada la libertad de trabajo del empleado y la libertad de selección del público en general. Por tal razón, en vez de modificar la voluntad de las partes para ajustarla a normas razonables, se declarará nulo todo pacto de no competir que no cumpla con las condiciones anteriores. (Escolio omitido.) *Arthur Young & Co. v. Vega III*, ante, págs. 176–178.

## II

A la luz de todo lo antes expuesto, entendemos que la cláusula de no competencia, aquí en controversia, es una válida que debe ser puesta en vigor. En otras palabras, se cumple, de manera afirmativa, con todas y cada una de las condiciones, o requisitos, que expusimos, y exigimos, en el citado caso de *Arthur Young & Co. v. Vega III*, ante. Por otro lado, y contrario a lo expuesto por el foro de instancia, somos de la opinión que el acuerdo suscrito por el recurrido Noa con la peticionaria Aconi no fue realizado por éste bajo presión o coacción de clase alguna. El *mero* señalamiento, por parte del gerente de operaciones de Aconi, de que de no firmarlo se "quedaría atrás" no constituye, en nuestra opinión, coacción suficiente para anular dicho acuerdo; meramente significaba que, de no firmarlo Noa, la referida Compañía no le brindaría la oportunidad de seguir asistiendo a los cursos de entrenamiento especializado en los Estados Unidos, limitándose de esa forma sus posibilidades de progresar en dicha Compañía.

Por los fundamentos antes expuestos, *se expide el auto y se dicta sentencia revocatoria de la resolución emitida por el foro de instancia, devolviéndose el caso a dicho foro para procedimientos ulteriores consistentes con lo aquí resuelto.*

Así lo pronunció, manda el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Hernández Denton concurrió con el resultado sin opinión escrita. El Juez Asociado Señor Fuster Berlingeri disintió con opinión escrita.

(*Fdo.*) Francisco R. Agrait Lladó
*Secretario General*

— O —

Opinión disidente emitida por el Juez Asociado Señor Fuster Berlingeri.

Por las razones y fundamentos que formulé en mi opinión concurrente en *Arthur Young & Co. v. Vega III*, 136 D.P.R. 157, 185–192 (1994), me veo obligado a disentir del injusto resultado al cual llega la mayoría en su sentencia en este caso.

El pacto de no competir, que está ante nos aquí, constituye con claridad un contrato de adhesión que fue aceptado por el empleado porque no tenía otra alternativa. En vista de ello, lo menos que deberíamos exigir para darle validez al susodicho pacto es que haya mediado una *causa adecuada*; es decir, que el empleado haya recibido una apropiada compensación económica particular a cambio del pacto de no competir. La mayoría en esta sentencia, como en la opinión de *Arthur Young & Co. v. Vega III*, supra, reitera que dichos pactos de no competir no son válidos si el patrono no le da al empleado una contraprestación especial suficiente por suscribir el pacto. Sin embargo, la mayoría aquí convalida el pacto en cuestión, *aunque es evidente que no medió tal contraprestación o causa* . La mayoría, pues, dice una cosa pero hace otra. No aplica la propia norma que ha formulado como condición para la validez del pacto. No hubo causa, pero aun así la mayoría resuelve que el pacto es válido.

Por otro lado, la mayoría interpreta, de manera muy acomodaticia para el patrono, su amenaza hacia el empleado de que si no firmaba el pacto en cuestión, dicho empleado "se quedaría atrás" en la compañía. El Art. 1219 de nuestro Código Civil, 31 L.P.R.A. sec. 3406, preceptúa que existe intimidación, del tipo que anula el consentimiento prestado en algún pacto o contrato, *"cuando se inspira a uno de los contratantes el temor racional y fundado de sufrir un mal inminente en su persona o bienes"*. (Énfa-

sis suplido.) Se trata de una coacción moral, encaminada a asustar o producir miedo en el ánimo de una persona. *Calderón v. Vallecillo*, 77 D.P.R. 859, 867 (1955). Si existe o no tal intimidación, dependerá de las circunstancias de cada caso. *Rivera v. Banco Industrial, etc. y García, Int.*, 49 D.P.R. 709 (1936); *Nassar Rizek v. Hernández*, 123 D.P.R. 360 (1989).

A la luz de esta normativa es difícil comprender cómo la mayoría puede afirmar que la amenaza del patrono en el caso ante nos no constituyó "presión o coacción de clase alguna". No le mereció importancia a la mayoría que se trataba de un antiguo y experimentado empleado de la compañía, que había laborado en ésta durante doce de los catorce años que dicha compañía llevaba haciendo negocios, y que había ascendido notablemente en la misma hasta ocupar puestos de mayor jerarquía. Dentro de estas circunstancias, me parece evidente que para tal empleado la amenaza de que no progresaría más dentro de la compañía constituyó una seria coacción, aunque la mayoría ingenua o insensiblemente no lo considere así. El empleado había dedicado doce años productivos de su vida a lograr el éxito de la compañía y así se había ganado una posición decorosa en ésta. Ahora, de buenas a primeras, todo ello quedaba en grave riesgo de menoscabo si no accedía a la "oferta" del patrono. Para mí dicha "oferta" era una amenaza seria, y constituyó claramente una coacción moral intimidante que vicia la validez del pacto que el empleado firmó porque no tenía ninguna otra alternativa real.

Aquí, como en *Arthur Young & Co. v. Vega III*, supra, encaramos una conducta patronal que atenta contra la autonomía laboral del trabajador, contra los derechos de los consumidores, contra la libertad contractual de terceros y contra las premisas económicas de libre empresa y libre competencia, sobre las cuales se erige el régimen de las sociedades de mercado. La mayoría, sin embargo, insiste en reconocerle validez generalmente a los pactos referidos.

En *Arthur Young & Co. v. Vega III*, supra, la mayoría, al menos, estuvo dispuesta a resolver que el pacto particular de dicho caso era nulo. Ahora aquí, en cambio, la mayoría *convalida* el pacto en cuestión al aplicar ciegamente lo pronunciado en la anterior opinión. Con ello la mayoría ahora no sólo le da continuidad a una desacertada política judicial sino que también, en el caso de marras, decide favorecer al contrayente económicamente más fuerte en detrimento del contrayente más débil. Como ello no es conforme a mi noción de lo que es justo, DISIENTO.