**H & R BLOCK TAX SERVICES, INC., Plaintiff**

v.

**Sandra RIVERA–ALICEA, et al., Defendant(s).**

**Civil No. 08–1232 (JAG).**

United States District Court, D. Puerto Rico.

July 7, 2008.

Juan C. Fortuno–Fas, Fortuno & Fortuno Fas, San Juan, PR, PHV Gardiner B. Davis, PHV Nathan A. Orr, PHV S. Jane Bruer, PHV David M. Kight, Spencer Fane Britt & Browne LLP, Kansas City, MO, for Plaintiff.

Manuel Porro–Vizcarra, Manuel Porro Vizcarra Law Office, Guaynabo, PR, Luz I. Rivera–Rivera, Luz Ivette Rivera & Associates, San Juan, PR, Mario Pabon–Rosario Hato Rey, PR, for Defendants.

**OPINION AND ORDER**

GARCIA–GREGORY, District Judge.

Pending before the Court are Defendants Fast Tax Solutions Inc. ("Fast Tax") and Sandra Rivera Alicea's ("Sandra") (collectively "Defendants") Motions to Dismiss. (Docket Nos. 29 and 36). For the reasons set forth below, the Court **GRANTS** in part and **DENIES** in part Defendants' Motions.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff H & R Block Tax Services Inc. ("Block") is a corporation engaged in the business of providing tax services. As part of its operation in the Commonwealth of Puerto Rico, it grants franchises for the operation of businesses that perform tax preparation and related services. On or about November 19, 1994, Block and Sandra entered into a Franchise Agreement under which Sandra agreed to perform income tax return preparation services as a Block franchise in Aguadilla, Puerto Rico. During the course and scope of the franchise relationship with Block, Sandra was entrusted with confidential information and trade secrets of Block. The confidential information provided to Sandra included, but was not limited to customer lists, pricing strategies, pricing history, sales and competitive strategies, marketing strategies, performance statistics, growth strategies, employee compensation plans, and quality assurance strategies. Block also provided technical know how, operations manual, marketing advise, sales techniques, client contact and communication techniques, and office computer and technical support.[1]

---

1. According to Block, all of this constitutes confidential information under the Franchise Agreement.

The Franchise Agreement imposed the following obligations on Sandra in the event of the termination of the franchise:

If this Agreement is terminated ... all rights of Franchisee shall terminate ... Without limiting the generality of the foregoing, upon any termination of this Agreement all amounts payable to Block or any of Block's subsidiaries or affiliates shall immediately become due and payable and Franchisee shall immediately return to Block all supplies and other items provided under paragraph 7, copies of all customer tax returns and all materials, data and property of Block, including all computer software provided under paragraph 8, all sets and copies of the Manual and all books, records, customer lists, customer names, forms, files and computer storage materials including such information and other relevant data ... If Franchisee owns the real property then used in connection with Franchisee's tax return preparation or Additional Services operations, for a period of one year after termination of this Agreement, Franchisee shall not lease such premise to any person (other than Block or a transferee approved by Block pursuant to paragraph 16) for the purpose of conducting a tax return preparation business or business engaged in performing Additional Services. Block shall have the sole right and privilege to use any information appearing on file copies of customer tax returns in connection with the preparation of subsequent year's tax returns for such customers ... Franchisee will also upon any such termination refrain from holding Franchisee out to the public in any ways as affiliated or connected with Block, and thereafter distinguish Franchisee's business, if any, so clearly from that of Block as to avoid all possibility of any confusion by the public.

Pursuant to the Franchise Agreement, Sandra also agreed to covenants of non-competition, non-solicitation, and non-disclosure. The covenant of non-competition states that for a period of two years after the Franchise Agreement's termination Sandra cannot: (1) "compete directly or indirectly, whether as an owner, stockholder, partner officer, director or employee, with Block or Block franchises in the business of preparing tax returns or performing Related Services or Additional Services in or within 5 miles of the Franchise Territory." Regarding the non-solicitation agreement, the Franchise Agreement states that for a period of two years after its termination Sandra cannot:

directly or indirectly, whether as an owner, stockholder, partner officer, director or employee, solicit by mail, phone or in person, or divert from Block or Block franchises any person for whom Franchisee prepared a tax return or performed Related Services or Additional Services at any time during the term of this Agreement for the purpose of rendering of services in connection with the preparation of tax returns or performance of Related Services or Additional Services ...

Under the Franchise Agreement, Sandra also agreed to:

never [ ] divulge to or use for the benefit of any person, association or corporation outside of the [ ] Block organization, any information or knowledge concerning customers, the methods, promotion, advertising or any other systems or methods of operation of Block's business or that of Block's franchises which Franchisee may have acquired by virtue of his operation under this Agreement ... or [ ] do any deliberate act prejudicial or injurious to the goodwill or name of Block. Information furnished to employees shall be reasonably limited to

that which directly relates to such employee's duties and assists in the proper performance of such duties.

Sandra operated a Block franchise in Aguadilla until July 16, 2007 when the franchise was terminated by Block. Thereafter, on or about January 1, 2008, Sandra began to work for Fast Tax, a corporation located in Aguadilla operated by former Block District Managers, which competes with Block in the tax service industry. According to Block, Sandra in concert with Fast Tax and in breach of the Franchise Agreement's covenants of non-competition, non-solicitation, and non-disclosure is providing tax preparation services to Block customers, and using and divulging Block's trade secrets and confidential information. Additionally, Block alleges that Sandra is improperly competing with Block and its new franchisee in Aguadilla, Puerto Rico because it is engaging in the business of preparing tax returns within one year of the termination of the Franchise Agreement, and within 5 miles of Block's current offices. Block also alleges that Sandra has failed to remit to Block full royalty payments to which it is entitled under the Franchise Agreement.

Furthermore, Block claims that Defendants wrongfully retained its customer lists, customer names, customer files and tax returns, and other Block customer information. Moreover, Block avers that Defendants misappropriated Block's property, trade secrets and confidential information. Block further alleges that Defendants routed Block's phone numbers used in Sandra's old franchise to Fast Tax. Finally, Block contends that Defendants falsely told Block's customers that Block no longer existed and/or that Fast Tax had become partners with Block. According to Block, it has suffered considerable damages as a result of Defendants' actions.

As a result, on February 21, 2008, Block filed a "Verified Complaint for Injunctive Relief and Damages" against Defendants. Block "seeks immediate emergency injunctive relief to recover and impound from Defendants highly confidential and proprietary information regarding [ ] Block's property after the termination of a franchise agreement with [ ] Block." Block also seeks damages. Block's complaint contains six (6) different counts. Count I is directed to Defendants and in it Block alleges violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 et seq.[2] According to Block, Defendants knowingly, with intent to defraud, and without authorization accessed Block's computer software on a protected computer and obtained valuable information and furthered the intended fraud, which resulted in damages.

Count II is a damage claim against Sandra for the breach of the Franchise Agreement between Block and Sandra. According to Block, Sandra materially breached the terms and conditions of the Franchise Agreement when she permitted her Electronic Identification Number ("EFIN") to be revoked by the Internal Revenue Services. Furthermore, Block alleges that Sandra breached the Franchise Agreement when it failed to properly prepare each tax return accurately and in accor-

---

**2.** Section 1030(a)(4) of the CFAA states in pertinent part that: "[whoever] knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value ... shall be punished." 18 U.S.C. § 1030(a)(4). Although the CFAA is primarily a criminal statute, under Section 1030(g), "any person who suffers damage or loss ... may maintain a civil action ... for compensatory damages and injunctive relief or other equitable relief."

dance with the law. Block further avers that she breached the Franchise Agreement by failing to maintain minimum office hours, adequately communicate availability of office hours, and failed to pay for utility services which led to the office being shut down. Moreover, Block contends that Sandra breached the Franchise Agreement when she failed to pay her business taxes. Block also claims that Sandra breached the Franchise Agreement when it did not inform and provide Block with the legal documentation regarding a separate legal proceeding against Sandra's franchise. In addition, Block alleges that Sandra breached the Franchise Agreement when she failed to maintain records pertaining to tax preparation and other services. Block also claims that Sandra breached the Franchise Agreement between them when she abandoned the Block office and failed to maintain contact with Block. Furthermore, Block states that Sandra breached the Franchise Agreement when it failed to pay all the sums due under said agreement. According to Block, Sandra also violated the Franchise Agreement by disclosing confidential information that she obtained from Block. Finally, Block alleges that Sandra competed against it and solicited and provided tax services to Block customers all in violation of the Franchise Agreement.

Count III, which is directed to Defendants is a claim for violation of the Puerto Rico Unfair and Deceptive Practices Act. According to Block, Defendants by using, divulging, and misappropriating Block's confidential information and by competing with Block have engaged in unfair methods of competition in or affecting commerce. Count IV is a state law tortious interference with contractual relations claim against Defendants. Block alleges that Defendants have intentionally harmed its new franchisee in Aguadilla, Puerto Rico by serving the franchisee's customers and using Block's confidential information. Count V also directed against Defendants is a claim for the alleged conversion of certain Block signs, and alleged failure to return confidential business information and trade secrets. Finally, Count VI, is a claim against Defendants for alleged misappropriation of trade secrets such as customer lists, marketing information, pricing information and methodologies. (Docket No. 1).

On February 22, 2008, Block filed a Motion for Temporary Restraining Order and Preliminary Injunction. (Docket No. 2). However, on April 1, 2008, said motion was withdrawn pursuant to Block's request. (Docket No. 64 and 65).

On March 12, 2008, Fast Tax moved to dismiss Block's complaint. Essentially, Fast Tax argues that the present case should be dismissed on *res judicata* grounds. According to Fast Tax, on January 18, 2007, Block, through the same counsel appearing in this case, filed a complaint against Defendants before the Superior Court of Puerto Rico, Aguadilla Part, Civil No. APE2008–0005 (601) ("Aguadilla case"). Fast Tax claims that said complaint arises from exactly the same nucleus of operative facts as the present matter, namely, the actions and events which took place when the relationship between Sandra and Block ended and the relationship between Sandra and Fast Tax commenced. Furthermore, Fast Tax alleges that in the case before the Aguadilla Court, Block requested relief with regard to several of the issues contained in the present case.

Fast Tax informs the Court that in the Aguadilla case, Block requested injunctive relief to: (1) restrain Defendants from using the telephone number used by Sandra when she was a Block franchisee; (2) restrain Defendants from entering the building previously utilized by Sandra when she

was a Block franchisee; (3) enforce the non-competition agreement between Block and Sandra; (4) restrain Defendants from removing Block signs from the building, and (5) force Defendants to return any property removed from the aforementioned building. Furthermore, as part of its request for injunctive relief, Block requested the Aguadilla Court to enforce the terms of a Settlement Agreement entered into by Sandra and Ms. Waleska Mendez Aviles as part of another case before said Court, Civil No. AAC2005–0075(601) (hereinafter "Settlement Agreement"). Pursuant to the Settlement Agreement, Defendants agreed to transfer "all material and articles provided by Block, manuals, books, archives, and client lists, electronic documents ('computer storage'), computer programs ('computer software') provided by Block, articles that bear exhibit trademarks, telephone numbers and related services, and any lease agreement, be it for equipment or for real estate, attributable to the Business." (Docket No. 29, Exh. 2). According to Block, on January 31, 2008, the Aguadilla Court ordered Defendants: (1) to transfer all the telephone numbers to Block; (2) to return all the items agreed upon in the Settlement Agreement, and (3) to refrain from entering Block's old premises in Aguadilla. The Aguadilla Court's order became final on March 2, 2008.

According to Fast Tax, in the Aguadilla cases Block also requested redress as to the issues contained in three of the Counts in the present complaint, namely, Count II's breach of the Franchise Agreement claim, Count VI's claim for the violation of trade secrets and documents, and Count V's claim which relates to the removal of Block's sign. Fast Tax contends that the other three Counts which were not addressed in the Aguadilla case could have been brought in said case. As such, Fast Tax avers that all the requirement are met

in order to dismiss the present case on *res judicata* grounds. (Docket No. 29).

On March 20, 2008, Fast Tax filed a supplemental motion informing the Court that Block after being granted injunctive relief and after being served with the just discussed Motion to Dismiss, filed a voluntary motion to dismiss the Aguadilla case. Moreover, Fast Tax stresses that in the Aguadilla case Block filed an extensive memorandum of law before the State Court which addressed the effect of the non-competition agreement on Sandra. According to Fast Tax, the aforementioned acts demonstrate that: (1) Block did not file the Aguadilla case for the only purpose of receiving injunctive relief, and (2) that Block had plenty of time to "discover" and amend the complaint before the Aguadilla Court to include the CFAA claim. (Docket No. 53).

On March 28, 2008, Block opposed Fast Tax's request for dismissal. Block contends that the doctrine of *res judicata* is inapplicable to the case at bar because the Aguadilla case only resulted in a temporary remedy, specifically, a preliminary injunction being granted by the state Court. Additionally, Block stresses that the State Court did not make any determination on the merits either as to the factual or legal issues in the Aguadilla case. Block avers that the order by the Aguadilla Court is a provisional remedy and not a judgment on the merits as required by the *res judicata* doctrine. Furthermore, Block stated that on March 18, 2008, the Aguadilla Court granted its request for voluntary dismissal without prejudice and entered a judgment to that effect. (Docket No. 62).

■ Sandra also moved to dismiss Block's claims. On March 14, 2008, Sandra filed a "Motion to Dismiss, in the Alternative Motion to Compel Arbitration and Stay of Proceedings." Sandra also argues that the present complaint should

be dismissed under *res judicata* grounds. Alternatively, Sandra contends that the case at bar should be stayed or dismissed pursuant to the *Colorado River*[3] or the *Landis*[4] doctrines due to the fact that Block has a case with the identical operative facts before the State Court. Sandra agrees that the State Court handling the Aguadilla case ordered Defendants to: return the telephone numbers to Block; ordered them to return all the items as agreed upon in the Settlement Agreement; and barred Defendants from entering Block's old premises in Aguadilla. However, Sandra states that there are several remaining causes of actions before the State Court including the issue of the non-competition covenant. Finally, Sandra avers that Block should be ordered to arbitrate all of its claims except the claim that deals with the non-competition covenant because said claim is the only one that is not arbitrable under the Arbitration Clause of the Franchise Agreement. Sandra further requests that if Block's claims are sent to arbitration, the present case should be stayed until the arbitration process has concluded. (Docket No. 36).

On March 31, 2008, Block responded to Sandra's motion. Block essentially, re-hashed that which it stated in its response to Fast Tax motion to dismiss. Namely, that its claims cannot be dismissed under the *res judicata* doctrine because the Aguadilla case was not a final judgment on the merits. Block stresses that during the Aguadilla case Defendants did not file an answer, no discovery took place, and the issues were not litigated. According to Block, the Aguadilla case only resulted in the issuance of a preliminary injunction, which is not a judgment on the merits for *res judicata* purposes. Block also restates that thereafter, the case was voluntarily dismissed without prejudice pursuant to its request. Sandra's contention that the case should be dismissed under the *Colorado River* or *Landis* abstention doctrine were not addressed by Block. However, Block did address Sandra's allegation that its claim should be arbitrated. According to Block, none of its claims should be arbitrated because competition in violation of the Franchise Agreement is not subject to arbitration and competition is one of the core matters in dispute. Furthermore, Block argues that Defendants' claims are inextricably intertwined and to separate them is illogical and not supported by the Franchise Agreement. (Docket No. 63).

**3.** The landmark case of *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) established one special circumstance under which Federal Courts can refrain from exercising their jurisdiction. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996)(holding that abstention is the exception, not the general rule). In *Colorado River*, the Supreme Court established a doctrine governing the stay or dismissal of federal lawsuits. *Pastor–Ginorio v. R & G Mortg. Corp.*, 371 F.Supp.2d 89, 95 (D.P.R.2005). The purpose behind the *Colorado River* doctrine is to determine whether exceptional circumstances exist in a case, which favor an exception in the exercise of federal jurisdiction. *Id.* The *Colorado River* abstention doctrine applies if a two-part test is satisfied. *Id.* The Court must first determine whether the actions in the state and federal forums are parallel. *Id.* Second, the Court must perform a balancing of interest considering a number of factors in order to determine whether there exist "exceptional circumstances" to justify abstention. *Id.*

**4.** *Landis v. North American Co.*, 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936) established that, as a question of power, District Courts have discretion to stay a suit pending resolution of another which, "even if it should not dispose of all the questions involved, would certainly narrow the issues in the pending cas[e] and assist in the determination of the questions of law involved." *Taunton Gardens Co. v. Hills*, 557 F.2d 877, 879 (1st Cir.1977)(citing *Landis*, 299 U.S. at 253–54, 57 S.Ct. 163.).

On April 21, 2008, Sandra filed her response to Block's opposition. Sandra stressed that Block failed to address her arguments under the *Colorado River* and *Landis* doctrines. Moreover, Sandra claims that Block failed to address or misconstrued the grounds and argument that she raised regarding the arbitrability of Block's claims. Sandra also alleges that the Aguadilla case is not merely an action for injunctive remedies as alleged by Block. According to Sandra, a perusal of the complaint in the Aguadilla case demonstrates that said case arises from the same nucleus of operative facts as the case at bar. Moreover, Sandra avers that Block's allegation that the Aguadilla case was dismissed without prejudice is factually incorrect because the Aguadilla Court has yet to decide whether said action shall be dismissed with prejudice. (Docket No. 80).

Since this Court was unclear about the status of the Aguadilla case, an order was issued on May 15, 2008 requiring the parties to inform us of the status of said case. (Docket No. 88). All the parties complied with said order and informed the Court that on March 18, 2008, the Aguadilla Court, at the request of Block, issued a judgment dismissing the Aguadilla case without prejudice. Subsequently, Defendants filed a request for reconsideration alleging that the dismissal of the Aguadilla case should be with prejudice. At the request of the Aguadilla Court, both parties filed their brief regarding this matter. At the time of the filing of said informative motions, the Aguadilla Court had not ruled on whether the dismissal would be with or without prejudice. (Docket Nos. 89, 90, and 91). As a result, the parties were ordered to inform the Court when the Aguadilla Court made any further determinations on this matter. (Docket No. 95).

On June 20, 2008, Defendants complied with said order and informed the Court that the Aguadilla Court vacated its order dismissing the case and reinstated the case for further proceedings. Defendants state that the Aguadilla Court was completely unaware of the complaint filed by Block in this Court until said information was provided to it in Defendants' motion for reconsideration. Defendants translated a portion of the Aguadilla Court's holding which states in pertinent part as follows:

"Good faith is pervasive to all of the civil law and order. Plaintiff has intended to deprive the court from its jurisdiction over a matter that was under its attention in order to take identical issue to the federal court. It cannot do forum shopping. Plaintiff selected its Court when it filed this cause of action and remains in it."

The Aguadilla Court clarified that the case before it had two causes of action: the first one, seeking injunctive relief, which already had been provided and the second one, a request to enforce a non-competition clause signed by Block and Sandra. In addition, the Aguadilla Court stated that both Sandra and Block had filed extensive memorandums of law regarding the non-competition controversy. The Aguadilla Court reinstated proceedings to resolve the second cause of action and accordingly, ordered the parties to resume the discovery process regarding this matter. (Docket No. 98). Taking into consideration the aforementioned factual and procedural background we now proceed to address Defendants' contentions.

## STANDARD OF REVIEW

### A. *Motion to Dismiss Standard*

 Under Fed.R.Civ.P. Rule 12(b)(1), a defendant may move to dismiss an action for lack of subject matter jurisdiction. As courts of limited jurisdiction, federal courts must narrowly construe jurisdictional grants. *See e.g., Alicea–Riv-*

*era v. SIMED*, 12 F.Supp.2d 243, 245 (D.P.R.1998). Consequently, the party asserting jurisdiction has the burden of demonstrating the existence of federal jurisdiction. *See Murphy v. United States*, 45 F.3d 520, 522 (1st Cir.1995); *Droz-Serrano v. Caribbean Records Inc.*, 270 F.Supp.2d 217 (D.P.R.2003). When deciding whether to dismiss a complaint for lack of subject matter jurisdiction, the Court "may consider whatever evidence has been submitted, such as ... depositions and exhibits." *See Aversa v. United States*, 99 F.3d 1200, 1210 (1st Cir.1996).

■ Motions brought under Rule 12(b)(1) are subject to the same standard of review as Rule 12(b)(6) motions. *Negron-Gaztambide v. Hernandez-Torres*, 35 F.3d 25, 27 (1st Cir.1994); *Torres Maysonet v. Drillex, S.E.*, 229 F.Supp.2d 105, 107 (D.P.R.2002). Under Rule 12(b)(6), dismissal is proper "only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory." *Gonzalez-Morales v. Hernandez-Arencibia*, 221 F.3d 45, 48 (1st Cir.2000)(*quoting Correa-Martinez v. Arrillaga-Belendez*, 903 F.2d 49, 52 (1st Cir. 1990)). Under Rule 12(b)(1), dismissal would be proper if the facts alleged reveal a jurisdictional defect not otherwise remediable.

■ In *Bell Atl. Corp. v. Twombly*, —— U.S. ——, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court recently held that to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "a plausible entitlement to relief." *Rodriguez-Ortiz v. Margo Caribe, Inc.*, 490 F.3d 92, 95–96 (1st Cir.2007)(quoting *Twombly*, 127 S.Ct. at 1967). While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to "nudge [plaintiffs'] claims across the line from conceivable to plausible." *Twombly*, 127 S.Ct. at 1974. Accordingly, in order to avoid dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* at 1965.

The Court accepts all well-pleaded factual allegations as true, and draws all reasonable inferences in plaintiff's favor. *See Correa-Martinez v. Arrillaga-Belendez*, 903 F.2d 49, 51 (1st Cir.1990). The Court need not credit, however, "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" when evaluating the Complaint's allegations. *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.1996). When opposing a Rule 12(b)(6) motion, "a plaintiff cannot expect a trial court to do his homework for him." *McCoy v. Massachusetts Institute of Tech.*, 950 F.2d 13, 22 (1st Cir.1991). Plaintiffs are responsible for putting their best foot forward in an effort to present a legal theory that will support their claim. *Id.* at 23 (*quoting Correa-Martinez*, 903 F.2d at 52). Plaintiffs must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir.1988).

### Discussion

■ Defendants allege that the present case should be dismissed under *res judicata* grounds. Furthermore, Sandra proffered other doctrines in support of her request for dismissal or abstention. Specifically, Sandra supports said requests under the *Colorado River*, and *Landis* doctrines. Alternatively, Sandra contends that all of Block's claim should be sent to arbitration with the exception of the claim regarding the non-competition covenant because said claim is not arbitrable pursuant to the Arbitration Clause of the Franchise Agreement. We will first address

whether the present case should be dismissed under *res judicata* grounds.

### 1) *Res Judicata Doctrine*

██ Federal Courts are required "to give the same preclusive effect to State Court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Cruz v. Melecio*, 204 F.3d 14, 18 (1st Cir.2000)(citing *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 466, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982)). "The fact that a suit raises a federal question or seeks to vindicate federal constitutional rights does not blunt the force of this command." *Id.* (internal citations omitted). As such, Puerto Rico law must be applied to determine the preclusive effect of a judgment entered by a Commonwealth of Puerto Rico Court. The Puerto Rico Civil Code states how the doctrine of *res judicata* operates under Puerto Rico law:

> In order that the presumption of the *res adjudicata* may be valid in another suit, it is necessary that, between the case decided by the sentence and that in which the same is invoked, there be the most perfect identity between the things, causes, and persons of the litigants, and their capacity as such. P.R. Laws Ann. tit. 31, § 3343.

Our Circuit has previously explained that under Puerto Rico law, a party asserting a *res judicata* defense must establish three elements: "(i) the existence of a prior judgment on the merits that is 'final and unappealable'; (ii) a perfect identity of thing or cause between both actions; and (iii) a perfect identity of the parties and the capacities in which they acted." *R.G. Fin. Corp. v. Vergara–Nunez*, 446 F.3d 178, 183 (1st Cir.2006)(citing *Boateng v. InterAm. Univ., Inc.*, 210 F.3d 56, 61–62 (1st Cir.2000)).

██ There can be no doubt that under Puerto Rico law, the doctrine of *res judicata* requires a prior judgment on the merits. *Cruz v. Melecio*, 204 F.3d 14, 20 (1st Cir.2000). As such, for *res judicata* to operate, the·precluded party must have had a full and fair opportunity to litigate her case in the earlier proceeding. *Id.* at 19. Our Circuit has held that said judgment must be final and unappealable. *Id.* at 21.

The Aguadilla case is not final and unappealable. As previously mentioned, the Aguadilla Court recently reinstated discovery proceedings to properly address the enforcement of the non-competition agreement issue. Thus, there is no prior judgment on the merits that is "final and unappealable." Consequently, the doctrine of *res judicata* is inapplicable to the case at bar.

### 2) *Colorado River Doctrine*

██ Sandra alleges that, under the landmark case of *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), this Court should stay these proceedings, or in the alternative, dismiss the case in deference to the Commonwealth Court's proceedings. For the foregoing reasons, this Court finds that the case at bar should be dismissed.

██ Federal Courts have an obligation to exercise their jurisdiction once an action has been initiated in Federal Court. *Pastor–Glnorio v. R & G Mortg. Corp.*, 371 F.Supp.2d 89, 95 (D.P.R.2005). The general rule for litigation between the federal and state systems is that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction ...". *McClellan v. Carland*, 217 U.S. 268, 282, 30 S.Ct. 501, 54 L.Ed. 762

(1910). However, when said situation occurs and concurrent procedures are brought in both forums, the Court must exercise "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 96 L.Ed. 200 (1952). Therefore, Federal Courts will exercise their jurisdiction unless special limited circumstances dictate in a narrow number of cases a different result. *Id.*

*Colorado River* established one special circumstance under which Federal Courts can refrain from exercising their jurisdiction. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996)(holding that abstention is the exception, not the general rule). In *Colorado River*, the Supreme Court established a doctrine governing the stay or dismissal of federal lawsuits. *Pastor–Ginorio*, 371 F.Supp.2d at 95. This alternative doctrine focuses not on considerations of state-federal comity or on avoidance of constitutional decisions as in the traditional abstention doctrines, but rather on "considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River*, 424 U.S. at 817, 96 S.Ct. 1236(quoting *Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 96 L.Ed. 200 (1952)). The purpose behind the *Colorado River* doctrine is to determine whether exceptional circumstances exist in a case, which favor an exception in the exercise of federal jurisdiction. *Pastor–Ginorio*, 371 F.Supp.2d at 95.

The *Colorado River* abstention doctrine applies if a two-part test is satisfied. *Id.* The Court must first determine whether the actions in the state and federal forums are parallel. *Id.* The proceedings are considered to be parallel if they involve the same parties and "substantially identical claims", raising "nearly identical allegations and issues". *See Timoney v. Upper Merion Twp.*, 66 Fed.Appx. 403 (3rd Cir.2003). Second, the Court must perform a balancing of interest considering a number of factors in order to determine whether there exist "exceptional circumstances" to justify abstention. *Pastor–Ginorio*, 371 F.Supp.2d at 95.

To determine whether the required "exceptional circumstances" exist, a District Court must consider eight factors:

(1) whether either court has assumed jurisdiction over a res; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the parties' interests; (7) the vexatious or contrived nature of the federal claim; and (8) respect for the principles underlying removal jurisdiction. *United States v. Fairway Capital Corp.*, 483 F.3d 34, 40 (1st Cir.2007).

However, "no one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against the exercise is required." *Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*, 915 F.2d 7, 12 (1st Cir.1990).

There can be no doubt that for the *Colorado River* doctrine to apply here there must be a pending suit before the State Court that is parallel to the case before this Court. In the present case, as mentioned above, the Aguadilla case is still pending. The Aguadilla case and the case at bar have the same parties. Furthermore both complaints arise from the same

factual origin. Namely, the actions and events which took place when the relationship between Sandra and Block ended and the relationship between Sandra and Fast Tax commenced. Additionally, many of the issues before us have, will and may be addressed by the Aguadilla Court. Moreover, Block seeks nearly identical remedies in both cases. As such, the first prong of the *Colorado River* doctrine has been met. We now proceed to discuss whether there exist "exceptional circumstances" to justify abstention.

In the case at bar, both this Court and the State Court are capable of addressing the parties claims. However, the "inconvenient factor" points toward abstention in this case because the state and federal fora are not in the same city. The Aguadilla Court is located in the western part of Puerto Rico, which is where the events that led to the filing of this complaint transpired. *See Currie v. Group Ins. Comm'n,* 290 F.3d 1, 10 (1st Cir.2002). Furthermore, the Aguadilla Court has been entertaining Block's complaint since January 18, 2008, while Block's complaint in this Court was filed on February 21, 2008, more that a month later.

Block's decision to file its own suit in the Aguadilla Court before initiating this federal action arguably is one of the factors in this case suggesting a surrender of federal jurisdiction. However, the Supreme Court has clarified that this factor (sometimes called the "priority" element) "should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 21, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The Aguadilla case is more developed than the case before us. The Aguadilla Court has already granted Block's request for preliminary injunction

and has initiated discovery proceedings. Our Circuit has stated that it is not definitive whether the fact that a three day preliminary injunction hearing and the fact that discovery has begun in the case before the Commonwealth Court should count in the balance toward dismissal. *Villa Marina Yacht Sales, Inc.,* 915 F.2d at 15. We find that in the case at bar it does make a difference to a small degree because said fact must be considered in conjunction with the filing by the parties of memoranda of law in the Aguadilla Court regarding the issue of non-competition. This leads us to the next factor that favors abstention. Specifically, the risk of piecemeal litigation.

The risk of piecemeal litigation arises when the ruling from the State Court could render our opinion merely advisory. *United States v. Fairway Capital Corp.,* 483 F.3d 34, 42 (1st Cir.2007). Here, there is a high risk of that occurring. First, as Block has admitted, all of its claims are connected to the issue of the non-competition agreement since it clearly stated that "competition is one of the core issues [in] dispute." The State Court has already determined that it will address the issue of non-competition. If we were to do the same thing it could lead to inconsistent rulings, which would prejudice the rights of the parties before us. *See Liberty Mut. Ins. Co. v. Foremost–McKesson, Inc.,* 751 F.2d 475, 477 (1st Cir.1985).

As just mentioned, the core issue in the case at bar is the breach of the Franchise Agreement and its non-competition clause. Sandra and Block stipulated that the Franchise Agreement shall be subject to the laws of the Commonwealth of Puerto Rico. Therefore, there are controlling issues of Puerto Rico law. Nonetheless, the Court recognizes that Block proffered a federal law claim under the CFAA.

"Although the presence of a federal law issue must always be a major consideration weighing against surrender of jurisdiction, the presence of state law issues weighs in favor of surrender only in 'rare circumstances.'" *Villa Marina Yacht Sales, Inc.*, 915 F.2d at 15 (internal citations and quotations omitted). Abstention is appropriate "where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." *Colorado River*, 424 U.S. at 814, 96 S.Ct. 1236(internal citations omitted).

This Court finds that there is certainly a need for the Aguadilla Court to determine all the claims that derive from the non-competition issue since it deals with the interpretation of Puerto Rico's public policy regarding non-competition agreements. The Puerto Rico Supreme Court has dealt with the issues surrounding non-competition agreements and its rulings show that the enforceability of these agreements certainly presents difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar. *See, e.g., PACIV, Inc. Demandante–Peticionario v. Pablo O. Perez Rivera Demandado–Recurrido*, 159 D.P.R. 523, 2003 WL 21212748 (2003); *General Gases & Supplies Corp. v. Shoring & Forming Systems, Inc.*, 153 D.P.R. 861 (2001); *Aconi Telecommunications, Inc. v. Noa*, 136 D.P.R. 579, 584 (1994); *Arthur Young & Co. v. Vega*, 136 D.P.R. 157 (1994). Thus,

this is one of the "rare circumstances" where the presence of state law issues weighs in favor of abstention.

In the present case, of the eight factors only one does not favor abstention. Specifically, there is no *res* involved. Two factors are neutral. First, this case was not removed from the State Court. Second, Defendants do not specifically allege that this case is of a vexatious or contrived nature. However, there are five factors that favor abstention. The "inconvenience factor" and the "priority" element both point toward abstention. Furthermore, this case is one of the "rare circumstances" where the presence of state law issues weighs in favor of abstention. The fact that the controlling issues in the case at bar bear on policy problems of substantial public import which must be solved using Puerto Rico law highlights the adequacy of utilizing the state forum and not this Court to address the present complaint. Hence, in light of the unresolved issues of Puerto Rican law that this case brings, it would be better to avoid piecemeal litigation and to have a Puerto Rico court decide the case at bar. In other word, the desirability of avoiding piecemeal litigation; the fact that state law controls; and the adequacy of the state forum to protect the parties' interests all favor abstention.[5] After carefully taking into account both the obligation to exercise jurisdiction and the combination of "exceptional circumstances," this Court finds that the case at bar must be dismissed. Since the present case will

---

**5.** This Court does not have exclusive jurisdiction over Block's CFAA claim. *See Prominent Consulting LLC v. Allen Bros.*, 543 F.Supp.2d 877, 884 n. 6 (N.D.Ill.2008); *Liebert Corp. v. Mazur*, 2005 WL 1563202, 2005 U.S. Dist. LEXIS 13560 (N.D.Ill. June 6, 2005). Therefore, the Aguadilla Court can entertain Block's CFAA claim since it has concurrent jurisdiction over it. *Padilla–Morales v. Shell Co. (PR) Ltd.*, 2005 WL 4655134, 2005 U.S.

Dist. LEXIS 43267 (D.P.R. June 29, 2005)("absent any indication that the federal courts have exclusive jurisdiction over a particular subject, federal laws may be enforced in either the state or federal courts."). As such, the Aguadilla Court can adequately address said claim. *Cohen v. Gulfstream Training Acad., Inc.*, 2007 WL 2904150, 2007 U.S. Dist. LEXIS 73967 (S.D.Fla. Oct. 3, 2007).

be dismissed pursuant to the *Colorado River* abstention doctrine, this Court need not address, Sandra's alternative arguments under *Landis* and the Federal Arbitration Act, 9 U.S.C. §§ 1–16.[6]

### CONCLUSION

For the reasons stated above, the Court hereby **GRANTS** in part and **DENIES** in part Defendants' Motions to Dismiss. (Docket Nos. 29 and 36). Specifically, Fast Tax and Sandra's Motion to Dismiss under *res judicata* grounds shall be **DENIED**. However, Sandra's Motion to Dismiss under the *Colorado River* abstention doctrine is hereby **GRANTED**. As such, the present case shall be dismissed. Block's federal and state law claims against Defendants Fast Tax and Sandra shall be dismissed. Judgment shall be entered accordingly.

IT IS SO ORDERED.

---

**6.** Congress enacted the Federal Arbitration Act ("FAA") with the purpose of overcoming judicial resistance to arbitration. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 126 S.Ct. 1204, 1207, 163 L.Ed.2d 1038 (2006). This Act permits "parties to an arbitrable dispute to move out of court and into arbitration as quickly and easily as possible." *Southland Corp. v. Keating*, 465 U.S. 1, 7, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984); *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 22, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Section 2 of the FAA articulates the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts. *Buckeye Check Cashing, Inc.*, 126 S.Ct. at 1207. This section generally provides for the enforceability of a written arbitration provision.

*Circuit City Stores v. Adams*, 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001). Specifically, section 2 states as follows: "[a] written provision in ... a contract ... to settle by arbitration a controversy thereafter arising out of such contract ... or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In enacting section 2 of the FAA, Congress declared a national policy favoring arbitration and took away from the States the power to require a judicial forum for the resolution of the claims that the contracting parties had agreed to resolve through arbitration. *Southland Corp.*, 465 U.S. at 10, 104 S.Ct. 852.